## QUARLES *vs.* GRIGSBY.

[CREDITOR'S BILL AGAINST FRAUDULENT GRANTEE OF DECEASED DEBTOR.]

1. *When creditor may come into equity against fraudulent, grantee of deceased debtor.* A judgment creditor, not having exhausted his legal remedies, cannot come into equity, to subject property fraudulently conveyed by the debtor in his lifetime, without alleging and proving a deficiency of legal assets: if his bill shows on its face that, although the debtor's estate has been reported and decreed insolvent, there are outstanding legal assets which never came to the possession of the administrator, it is without equity.

APPEAL from the Chancery Court of Marengo.
Heard before the Hon. WADE KEYES.

THIS bill was filed by Samuel Quarles, the appellant, against James B. Grigsby, Jr., Edwin A. Glover, and John N. Ransom, as administrator of James B. Grigsby, deceased; and sought to subject to the satisfaction of a judgment, obtained by complainant at the spring term, 1843, of the circuit court of Perry county, against said Ransom, as administrator of Grigsby, certain slaves which were alleged to have been fraudulently conveyed by said decedent to said James B. Grigsby, Jr., who was his son, and to be in the possession of said Glover, as guardian of said James B. Grigsby, Jr. The decree of the chancellor, dismissing the bill for want of equity, is the only matter assigned as error.

WM. M. BROOKS, for the appellant.—It was not neces-
sary to sue out an execution on plaintiff's judgment, to
entitle him to the aid of a court of equity against a
fraudulent grantee.  A judgment creditor may file such
bill at any time.  The bill alleges, that all the assets in
the hands of the administrator, against whom the judg-
ment was rendered, had been fully administered.  An
execution on the judgment could not have been levied on
the slaves sought to be subjected, which had never come
to the possession of the administrator, but were in the
possession of the fraudulent grantee.—Weir v. Davis &
Humphries, 4 Ala. 442; P. & M. Bank v. Walker, 7 Ala.
926; Dargan v. Waring, 11 Ala. 988.

LOMAX & PRINCE, contra.—The plaintiff was not entitled
to the aid of chancery, until he had exhausted his legal
remedies by a return of *nulla bona* on an execution.
Pharis v. Leachman, 20 Ala. 662; Roper v. McCook,
7 Ala. 318; 4 Johns. Ch. 671, 682; 2 *ib*. 283; 6 Gill &
John. 424; 4 Munford, 539.  The report and decree of
insolvency does not, as against Grigsby, establish the
insolvency of the estate.  Moreover, the bill admits that
many valuable slaves, of which the intestate died possessed,
and only a portion of which are in Grigsby's possession,
never came to the hands of the administrator.  By not
pleading to the action, the administrator admitted assets,
and was therefore individually liable.—2 Porter, 236;
3 Stewart, 285.

STONE, J.—The bill in this case was dismissed by the
chancellor, for want of equity; and hence the record
contains nothing but the bill, its exhibits, and the decree
of the chancellor.  No reason is given in the decree for
the judgment of the court; but several reasons are here
urged in support of it.  We will notice but one.

The bill alleges, that the debt of Grigsby was reduced
to judgment against Ransom, the administrator *de bonis non*,
in the year 1843; and there is no averment that any execu-
tion was ever sued out on that judgment.  The bill further
alleges, that after that time, (how long after we are not in-

formed,) Ransom reported the estate insolvent; and that on that report the orphans' court declared it insolvent. The bill further avers, that "after exhausting all the effects which came to the possession of said administrators, or either of them, and after deducting the distributive share of your orator as allotted to him under the decree of said orphans' court," there remained, and still remains, due to complainant a large balance. The bill nowhere charges that there is not property subject to levy under execution, if complainant were to sue out such final process on his judgment. For aught that appears on the face of the bill, there may be property subject to levy, which is amply sufficient in value to pay off the complainant's demand; and yet that property may never have *come to the possession of said administrators.* So far from negativing this view, the bill expressly charges, that the "intestate, at the time of his death, was possessed of divers valuable negro slaves, which never came to the possession of said administrators or either of them, and were not in any manner applied in payment of the debts of said intestate."

It may be urged in answer to this, that the slaves claimed by James B. Grigsby, Jr., and which are sought to be condemned by this bill, were placed beyond the reach of the administrator by the deed of the intestate, executed in 1836. The correctness of this position may be conceded without affecting the result of this case.— See Pharis v. Leachman, 20 Ala. 662; Watts v. Gayle & Bower, *ib.* 817, and authorities cited. The bill does not aver, that *all* the "valuable negro slaves" owned by intestate *at* the time of his death, and which have not been "applied in payment of the debts," are in this condition. The charge in the bill is, that "James B. Grigsby, Jr., a son of said intestate, at or about the time of the death of said intestate, seized and took into possession, either by himself or through his agents and friends, a certain number thereof, named as follows," &c. The clear import of this language is, that there were slaves of the intestate, not reduced to possession by the administrator, and which *were not seized or taken into possession by James B. Grigsby, Jr., or his agents or friends.*

In what condition these slaves are held—whether under any, and what description of claim, we are wholly left to conjecture. Conceding the bill to be true in all its parts, these slaves may be free and unincumbered, and subject to levy under execution against the administrator *de bonis non.*

The bill fails to make a case for equitable interposition; and the decree of the chancellor is affirmed.—See State Bank v. Ellis, at the January term, 1857.

Let the appellant pay the costs of this appeal.