## Halfman's Executrix *v.* Ellison & Sons.

*Bill in Equity by Creditor, against Fraudulent Grantee of Deceased Debtor.*

1. *When simple-contract creditor may come into equity.* — A creditor by simple contract may come into a court of equity, to reach and subject property fraudulently conveyed by his deceased debtor in his lifetime, when there is a deficiency of legal assets to satisfy his demand.

2. *Defences to such suit.* — The theory of such a suit is, that the fraudulent donee is to be taken and deemed as an executor *de son tort;* consequently, he may plead the statute of non-claim, or may make any other defence which the rightful representative could make.

3. *Presentation of claim against decedent's estate; misnomer.* — The filing of a debt in the office of the probate judge, by the creditor or his attorney, as a claim against the estate of *Ethelwood* Halfman, will not operate as a presentation to the personal representative of *Ethelbert* Halfman, deceased.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. ADAM C. FELDER.

The bill in this case was filed on the 18th June, 1870, by John B. Ellison & Sons, merchants and partners doing business in the city of Philadelphia, against Mrs. Hannah M. Halfman individually, and as executrix of the last will and testament of Ethelbert Halfman, her deceased husband, and against the children and devisees of said Halfman. It was filed as a creditors' bill, in behalf of the complainants and all other creditors of said Ethelbert Halfman, who might choose to come in and make themselves parties; and sought to reach, and to subject to the satisfaction of the complainants' debt against said Halfman, certain property in the hands of the defendants, alleged to be assets of his estate, and as to which a discovery was

sought, and also certain lands, which he had bought in his life-time, and had the title taken in the name of his wife. The complainants' debt was evidenced by a promissory note of said Halfman for $2,859, which was dated at Philadelphia, July 12, 1861, and payable to the order of the complainants one day after date. The conveyance of the lands to Mrs. Halfman was executed on the 8th October, 1862, and recited as its consideration the payment of $6,300 by her husband. Halfman died in 1863, and his will was duly proved and admitted to probate in said county of Montgomery. Mrs. Halfman answered the bill, and, with other defences, pleaded the statute of non-claim as a bar, alleging that the complainants' demand was not presented to her, as executrix, within eighteen months after the grant of letters testamentary. Decrees *pro confesso* were regularly taken against all the other defendants. On final hearing, on pleadings and proof, the chancellor held that the proof showed a sufficient presentation of the complainants' debt, and rendered a decree in their favor; and his decree is now assigned as error.

J. FALKNER, for appellant.

R. M. WILLIAMSON, *contra.*

BRICKELL, J.— The general rule is, that to entitle a creditor to the assistance of a court of equity, upon an allegation of fraud in his debtor, he must stand as a creditor with a lien, or as one who has exhausted his legal remedies. There are many well considered authorities, applying this rule to creditors of a decedent, seeking to impeach conveyances made by him in his life, declaring that a court of equity should not intervene, until the debt as a charge upon the assets of the decedent has been judicially ascertained. 1 Hill's (S. C.) Chan. 291–301; 3 Barb. Chan. 427. This court has, however, relaxed the rule, and entertained bills filed by simple-contract creditors, to reach property fraudulently conveyed by the debtor in his life. *Pharis* v. *Leachman*, 20 Ala. 662; *Watts* v. *Gayle & Bower*, Ib. 817. To sustain such bill, a deficiency of legal assets must be averred and proved. *Ellis* v. *State Bank*, 30 Ala. 478; *Quarles* v. *Grigsby*, 31 Ala. 172. The theory on which such a bill proceeds is, that the fraudulent donee is to be taken and deemed as an executor *de son tort*. This being the capacity in which he is sued, he can prefer any defence to the debt with which he is sought to be charged, that the decedent in his life, or a rightful representative, could prefer. *Reed* v. *Minell & Co.*, 30 Ala. 61; *Brown* v. *Leavitt*, 6 N. H. 496. This is so, because the fraudulent conveyance is valid against

all the world, except creditors and *bonâ fide* purchasers.  *Rochelle* v. *Harrison*, 8 Port. 351; *Marler* v. *Marler*, 6 Ala. 637; *Roden* v. *Murphy*, 10 Ala. 804.

The appellees, averring that they are simple-contract creditors of Ethelbert Halfman, the testator of the appellant, Hannah M. Halfman, and averring a deficiency of legal assets to satisfy their debt, seek to condemn to its satisfaction real estate purchased by the testator in his life, the title of which he, without valuable consideration, caused to be made to the appellant Hannah, his wife.   When the purchase and conveyance was made, the debt of the appellees were existing.  To this bill the donee makes defence upon two distinct grounds.   The first of these, and the only one we shall consider, is, that the debt of the appellees was not presented to the rightful representative of the testator, within the period prescribed as a bar by the statute of non-claim.   It is competent for her to make this defence; and if it is well founded in fact, it is a full answer to the relief sought by the bill.

The uniform construction of the statute of non-claim has been, that in its operation and effect upon claims not presented, it is more comprehensive than the statute of limitations.   The bar of the statute of limitations operates on the remedy only. The debt remains, and by a subsequent promise the remedy for its recovery can be revived.   The statute of non-claim not only bars the remedy, but extinguishes the debt.   No subsequent promise can revive the remedy, or give vitality to the claim.   It is forever barred.   To have saved it as a claim, the statute requires its presentment.   The presentment is the act of the creditor, and it is only by his own laches that the debt can be extinguished by the operation of the statute. *Br. Bank Decatur* v. *Hawkins*, 12 Ala. 755; *Murdock* v. *Rousseau*, 32 Ala. 611; *Puryear* v. *Puryear*, 34 Ala. 555; *Bell* v. *Andrews*, Ib. 538.   The debt by operation of the statute being extinguished, the creditor would not be in a condition to assail the conveyance as fraudulent.   If fraudulent, it works him no damage; and, of consequence, that is not an inquiry on which a court will, at his instance, enter.

The testator died in 1863, having made and published his will, of which the appellant Hannah was nominated executrix. After his death, on the 26th March, 1863, probate of his will was had in the court of probate of Montgomery county, that being the county of his residence, and letters testamentary were issued to appellant Hannah, as executrix.   The statute of non-claim commenced running from this day, unless the bar is avoided by the ordinance of the convention of 1865, adopted September 21st, 1865, which declares that, "in computing the time necessary to create the bar of the statute of limitations

and non-claim, the time elapsing between the 11th day of January, 1861, and the passage of this ordinance, shall not be estimated." R. C. p. 53. A grave question, which may be of great practical importance, and on which an opinion should not be pronounced, until its decision is indispensable. This case may be disposed of, without its consideration.

A presentation of a claim, which will save the bar of the statute, may be made to the personal representative, or by filing the claim, or a statement thereof, in the office of the judge of probate granting the administration. When the presentation is by a filing in the office of the judge of probate, the claim is docketed, with a note of the time of such presentation. R. C. § 2241. Within eighteen months after the 21st September, 1865, a statement of the claim of appellees was filed in the office of the judge of probate, as follows: "Estate of *Ethelwood* Halfmann, deceased. John B. Ellison & Sons states, as a claim against the estate of *Ethelwood* Halfman, a note of twenty-eight hundred and fifty-nine dollars, dated 12th July, 1861, payable one day from date, with exchange on Philadelphia; said note being payable to the order of John B. Ellison & Sons, with the principal, interest, and exchange on said note." This statement is signed by the appellees, by their attorneys. It is insisted, this statement cannot be regarded as a sufficient presentation under the statute, because it describes the estate against which the claim is filed, as the estate of *Ethelwood* Halfman, the name of the testator being *Ethelbert* Halfman.

This misdescription is not the error, or fault, of the judge of probate. Therefore, the general rule, that when a party has discharged a duty incumbent on him, the omission or neglect of a public officer, in the discharge of a subsequent duty, shall not prejudice him, cannot be invoked. The misdescription, if it is in fact such, is in the statement the creditor is authorized to file, in lieu of a presentment to the personal representative in person. When the statute dispensed with personal presentation to the administrator or executor, at the election of the creditor, and substituted a filing of the claim, or a statement thereof, in the office of the judge of probate, it certainly was intended that the statement filed should be such as, on examination or inquiry at the office of the judge, would be brought to the knowledge of the executor or administrators, and would, of itself, import a claim for which the decedent was liable. It cannot be affirmed that the statement filed in this case, would, on examination or inquiry, have been brought to the attention of the personal representative of *Ethelbert* Halfman, nor that it imports a claim against him.

[Halfman's Executrix v. Ellison.]

The names, *Ethelbert* and *Ethelwood*, may have some similarity, but yet would be regarded as designating different persons.

The registration of a deed operates as constructive notice to all the world, when it is of that class of conveyances required to be recorded. A conveyance was executed by James M. McKewin, but was recorded as executed by James M. McKinnis, and the registration was declared insufficient to operate as constructive notice. *Jones* v. *Parks*, 22 Ala. 446. In *Dubose* v. *Young & McDowell* (10 Ala. 365), the certificate of the registration of a deed misdescribed the name of the grantor, substituting another name; the certificate was held of no value, and its defects not cured by a reference therein to " the foregoing deed," in which the name of the grantor was correctly recited. The principle, on which these decisions rest, is applicable to the question under consideration. It is impossible for us to say that an examination or inquiry by the personal representative of *Ethelbert* Halfman would have brought to her knowledge the claim now preferred by the appellees, as a claim made against this decedent. It is impossible for us to say that this statement would have been sufficient evidence of the existence of this claim, and its assertion against the testator, to have furnished an answer for the executrix, to a citation to compel her to make a final settlement of her administration. In *Cook* v. *Davis* (12 Ala. 551), claims were filed against an insolvent estate, verified by affidavit. The court declared, that the affidavit must, in connection with the claim, show something for which the estate is responsible, and that it must appear the claimant had either a legal or equitable interest in the claim asserted. In *Beene's Adm'r* v. *Collenberger & Co.* (38 Ala. 647), the claim was verified against the estate of *Jesse* Beene, dec'd, instead of *Benjamin Y.* Beene, dec'd. The verification was held insufficient. The correctness of these decisions cannot be doubted. They are decisive of the case before us. A claim against *Ethelwood* Halfman does not import a liability or demand on *Ethelbert* Halfman. We are, therefore, compelled to pronounce the evidence of presentment, within the period prescribed by the statute of non-claim, insufficient to remove its bar.

We have considered the authorities to which the counsel for the appellees refer. They do not seem to us to meet the question. They are cases of misdescription of bills of exchange, in notarial protests, or notices of protest. Extrinsic evidence has been received to correct such misdescriptions, or they have been deemed immaterial, not calculated to mislead the indorser or other party to the bill, who had a previous knowledge of its existence and character. The object of a presentation, under the statute of non-claim, is to bring to the knowledge of the

[Halfman's Executrix *v.* Ellison.]

personal representative, to whom no previous knowledge of the claim is imputable, the existence and character of a demand which is asserted against the estate in his hands to be administered. The object of a notarial protest is to certify the fact of presentment, and demand of acceptance and payment of commercial paper; and the object of the notice of protest is to inform parties to this paper, who have full knowledge of its existence and character, of the fact of demand, presentment, and the refusal or failure to accept or pay. The difference in the objects, and in the relations of the parties, makes a wide difference in the rules applicable to the one or the other. It would be manifest injustice, to hold an executor or administrator chargeable with a knowledge of the existence and character of the claims outstanding against the testator or intestate at his death, and to attach sufficiency to a description of such claims, which is attached only because of such knowledge.

Reaching the conclusion that the claim of the appellees is barred by the statute of non-claim, renders unnecessary the decision of other questions which are argued in the briefs of counsel. The decree of the chancellor is reversed, and a decree here rendered, dismissing the bill of the appellees; and they must pay the costs in this court, and in the court of chancery.

NOTE BY REPORTER. — The appellees' counsel having filed an application for a rehearing, the foregoing opinion was withdrawn, and the cause held under advisement until the January term, 1875, when the following opinion was delivered.

MANNING, J. — We have considered the able argument of counsel for appellees, for the rehearing in this cause. It presents a question not previously discussed. It is insisted, that, though the appellees failed to present according to the statute of non-claim, to the executrix of Halfman, the note made by the latter to them, this does not prevent them from maintaining this suit, for the payment of it, out of property which Halfman, in his life-time, and while the debt existed, caused to be conveyed to his wife, without a valuable consideration paid by her. The argument, in brief, is this: The conveyance to the wife is valid against Halfman, his heirs, and legal representatives, who, therefore, cannot recover the property conveyed, for the purposes of administration, or payment of debts; but, being without valuable consideration from the wife, the deed to her is voluntary, and fraudulent and void as to creditors, who may proceed in equity against the grantee, to subject the property to payment of Halfman's debts; and this, it is insisted, they may do under section 3446 of the Rev.

[Halfman's Executrix *v.* Ellison.]

Code, without exhausting legal remedies. Hence, the omission of creditors to demand payment of the executrix does not deprive them of recourse against the property conveyed to a voluntary grantee, who may be pursued as constructively a trustee for them.

In support of this argument the cases of *Doe, ex dem. Duval* v. *McLosky,* 1 Ala. R. 710; *Inge* v. *Boardman,* 2 Ala. 331; *Locke's Ex'r* v. *Palmer et al.,* 26 Ala. 312, and *Mahone* v. *Haddock,* 44 Ala. 90, are cited. The first three of these concern mortgages. In *Duval* v. *McLosky,* and in *Inge* v. *Boardman,* it was held, that the omission of a mortgagee to present the mortgage debt, according to the statute of non-claim, did not debar him from maintaining a suit to foreclose; and in *Locke* v. *Palmer,* it was held, that the failure to present the claim would not bar the mortgagor's equity of redemption, or suit to redeem.

As explained in *Duval* v. *McLosky,* a mortgagee has three remedies: an action for the mortgage-debt, ejectment for the land under the legal title conveyed to him by the mortgage-deed, and a suit in equity for a foreclosure of the mortgagor's equity of redemption. The mortgagee need not claim payment of the debt at all. He has a legal title to the mortgaged land instead, and may be content with that; and if not in possession, he can, having an executed conveyance of the legal title, obtain possession, by the appropriate action, of that which legally belongs to him. The equity of redemption, remaining in the mortgagor, is a mere right to have the property back when he shall pay the mortgage-debt; and the suit to foreclose was, in its origin, a proceeding by the mortgagee, to divest that right, and thus disencumber his legal title, unless the mortgagor should, within a short time to be prescribed by the court, pay the debt.

It is true, the suit to foreclose is now usually brought to obtain a sale of the mortgaged property, to pay the debt; and the mortgage is, in equity, regarded as a security therefor. Yet the decree may still, in a cause in which it would not work injury or hardship to either party, be one of strict foreclosure, without a sale; and the effect of such a decree would be merely to clear the mortgagee's legal title of the equity of redemption. Indeed, if the mortgaged property were manifestly of value insufficient to pay the mortgage-debt, and by failure to present this to the executor, the mortgagee had lost all recourse for it against the mortgagor's estate, in most cases, with a view to avoid expense and delay, a decree of strict foreclosure might be the one most proper to be entered.

It is evident, therefore, that though, as against a creditor who is also a mortgagee, the debt should be really extinguished by his omission to present it to the debtor's executor, this

would not destroy a title held under an executed mortgage-deed, or debar the mortgagee of his action of ejectment, or suit in equity to foreclose.

The decisions, then, in the first two cases cited, are not in-harmonious with those cited by Judge BRICKELL, in the opinion heretofore filed in this cause, to the effect that a failure to present a claim against a deceased debtor, to his executor or administrator, according to the statute of non-claim, operates an extinguishment of the debt.

The case of *Locke's Ex'r* v. *Palmer* (26 Ala. R. 312), so far as it relates to the point under consideration, was that of mortgagors claiming the right to redeem mortgaged personal property, on payment of the debt to the *creditor's* executor, and of denial by him of their right to do so, on the ground that they had not presented to him their equity of redemption, as a claim against the estate. But, while the courts admit that, at law, and legally, the mortgagee has the title to the mortgaged property, and is the owner, courts of equity hold that the equitable title is in the mortgagor. Therefore, this court responded: " We are clear, this statute " (that of non-claim) " does not refer to claims of title, for the reason, that claims of such a character cannot, in any just sense, be said to be claims against the ' estate ' of the deceased: on the contrary, the right to recover is based upon the fact, that the property claimed does not belong to the estate." And thereupon the court decided, that the statute did not bar an equity of redemption. This decision also is consistent with well-established principles.

In *Mahone* v. *Haddock* (44 Ala. R. 90), the complainant claimed the benefit of a vendor's lien on land for the payment of the purchase-money, due by a bond executed by the vendee about ten years before, at the time the land was conveyed to him, and which specified the land purchased, the amount to be yet paid for it, and a condition on which it should be payable, but did not in terms reserve any lien. The vendor had executed a deed of conveyance, without taking back a mortgage; and the bond not having been presented to the administrator of the vendee within the prescribed time, and the estate of the vendee having been reported insolvent, complainant claimed payment in full out of the land for which the bond was given. Defendants (the legal representatives of vendee) insisted that, by the statute of non-claim, the debt was forever barred, and that therefore the vendor's lien was lost. The court decided it was not.

This decision is not defensible upon the principles and line of argument indicated above as sustaining the decisions in the other cases; unless it be held, that the bond in this case made by the vendee, taken in connection with the deed of the vendor,

[Halfman's Executrix *v.* Ellison.]

created a mortgage in favor of the latter. And such, PETERS, J., seems to have considered the effect of the bond. He says: " The bond given by Haddock . . . in the hands of the complainant" (Mahone, assignee of the bond), "is a lien for the purchase-money." And subsequently he says: " Here, the lien is a separate security, in the nature of a mortgage, and it can only be barred when the mortgage would be barred. And the decree upon the bond may be simply for the foreclosure of the mortgage ; or it may be for the foreclosure of the mortgage, and for the debt also, except when the debt is barred," &c.

Notwithstanding this language and that of other opinions, likening the vendor's lien for the purchase-money on land that he has conveyed to the vendee, to a mortgage, it is certain, that while, in some aspects, there is a resemblance between the two, in others they are very different things ; and the omission to keep in mind the particulars in which they differ, may lead to erroneous and embarrassing conclusions. Whether this is so in the case of *Mahone* v. *Haddock,* we do not decide. But we should pause before extending the ruling in that case, to a similar one in which the vendor, relying on the solvency of the purchaser, should convey land to him without taking back a mortgage, or any evidence in writing of a lien reserved for the unpaid purchase-money ; especially, if he should in his bill allege (as Mahone did), that the estate of the vendee had been reported insolvent, and would probably be settled as an insolvent estate.

In this connection, we refer to the citations made by COLLIER, C. J., in *Houston* v. *Stanton* (11 Ala. Rep. 422–3), from the opinions of Story, J. in *Gilman* v. *Brown* (1 Mason's R. 191), and of Marshall, C. J., in *Bailey* v. *Greenleaf* (7 Wheat. R. 46). The former says of such a vendor's lien : " It is not of so high and stringent a nature as that of a judgment creditor, for the latter binds the land according to the course of the common law ; whereas the former is a mere creature of a court of equity, which it moulds and fashions according to its own purposes. It is, in short, a right which has no existence, until it is established by the decree of a court in the particular case ; and is then made subservient to all other equities between the parties, and is enforced in its own peculiar manner, and upon its own peculiar principles. It is not, therefore, an equitable estate in the land itself, although sometimes that appellation is loosely applied to it." And Chief Justice Marshall says : " A vendor, relying on this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is in some . degree accessory to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of an estate, on which he claims a secret

lien. It would seem inconsistent with the principles of equity, and with the spirit of our laws, that such a lien should be set up in a court of chancery, to the exclusion of *bonâ fide* creditors."

In *Mahone* v. *Haddock*, there was, however, a lien as established by courts of equity, upon particular property, for the payment of a particular debt. But in the cause now before us, there is no such specific lien. The complainants sue as creditors of Halfman, to be paid out of property which Halfman caused to be conveyed by a deed, voluntary as between him and his wife, to her. Being voluntary (it is argued), it is fraudulent and void as against complainants. What then ? Does a deed, or transaction, void as to them, create any lien in their favor ? Certainly not. But it shall not be an obstacle in their way. Equity, for their benefit, will declare it to be inoperative to convey to the wife, and make the land subject to payment of the debt to complainants, just as if the land had belonged to Halfman at his death, and had descended to his heirs, or had passed to his devisees, or was subject to administration by the executrix. And no one will contend that it would be then subject to a debt that was barred by the statute of nonclaim.

To the suggestion of counsel, that a case might arise, in which the smallness of the estate in the hands of the executor might induce a creditor not to take the trouble to present a claim, which the executor evidently had not means to discharge ; and that afterwards, when the statute created a bar, it might be discovered that there was other property, which the debtor had in his lifetime conveyed away by a voluntary deed ; we reply, the courts cannot help them, who, by reason of imprudence, or lack of vigilance, neglect to do what the law prescribes must be done in order to preserve their rights.

Observe, on the other hand, what would be the result of such rulings as that insisted on for the appellees in this cause. If the deceased, Halfman, instead of conveying the land in controversy, by a voluntary deed, to his wife, had devise it to her by his will, and she were now in possession of it a devisee, the plaintiffs would be barred of all right to subjec it to their debt ; yet the gift by will would be no less voluntary than the gift by deed.

Again : Suppose a father in his lifetime, and while indebted, should give by deed a valuable property, by way of advancement, to an elder child ; and afterwards, estimating the residue of his estate, should find that, after deduction for the payment of all his debts, enough would remain to enable him to give to each of his younger children as much as he had given to the elder ; and thereupon he should, by his will, leave to them

[Baldwin v. Deming's Administrator.]

all of his remaining property and effects, after payment of his debts: If the creditors, by failure to present to the executor, should be barred by the statute of non-claim, they could not recover a cent out of the ample estate that would go to the younger children; but, if the doctrine contended for in this cause should be established, those same negligent creditors, in such a suit as this, might coerce payment to them out of the advancement made to the elder child, even to the extent of depriving him or her of all benefit whatever from the father's estate.

We are of opinion, that the debt to the appellees was so extinguished by their failure to present it to the executrix according to the statute of non-claim, that they cannot maintain their suit in this cause.

The application for a rehearing is denied.