# Campbell's Adm'x *v.* City Council of Montgomery.

| 53 | 527 |
| 101 | 570 |

*Action against City to recover Damages for Death of Intestate.*

1. *Montgomery, city of; duty under its charter to repair streets.*—The duty imposed by its charter upon the city of Montgomery, to keep its streets and highways "in repair," is a perfect corporate duty, for the breach of which the city must answer in damages.

2. *Same.*—This duty is performed, when there is no defect, imperfection, or obstruction in the street, which renders it unsafe or inconvenient for use by the public; it has no reference to unlawful assemblages, violence, riots, and the like, whereby passage along the streets is temporarily rendered inconvenient or dangerous, for none of these occurrences put the highway out of "repair."

3. *Same ; city, for what not liable.*—The city is not liable for injuries resulting from violence, which the police by diligent discharge of duty might have prevented. Although appointed by the city, the police are *quasi* civil officers, for whose misfeasance, or non-feasance in office, the city is not responsible, though they are personally answerable.

APPEAL from Circuit Court of Montgomery.

Tried before Hon. JAS. Q. SMITH.

This was an action brought by appellant, as administratrix of S. S. Campbell, deceased, against the city council of Montgomery, to recover damages for the killing of her intestate and husband, which, it is averred, was caused by the negligence of the defendant to keep its streets in repair, &c. The complaint contained several counts, to each of which a demurrer was sustained; and plaintiff declining to plead over, judgment final was rendered against her.

The *gravamen* of the first count was, that the city failed, although requested to do so, and having ample power and force to enforce obedience to its commands, to prevent the firing of powder between anvils, at the "Artesian Basin" in the city—a practice contrary to its ordinances, and dangerous to the lives of citizens; and that plaintiff's intestate, while walking by, was struck by a fragment of an anvil, and killed.

The *gravamen* of the second count was, that it was made the duty of the city to keep its streets and highways in repair, and its inhabitants were exempted from road duty under the provisions of its charter; that it failed and neglected to perform this duty, and refused to keep open and safe to passengers thereon the streets and squares of said city, leading through and to the "Artesian Basin"; by reason whereof, a large crowd assembled there, and to the great terror and

Campbell *v.* City Council of Montgomery.

danger of the inhabitants, and with the knowledge and consent of the defendant, did explode anvils, charged with powder, to make a noise resembling the firing of cannon, with a reckless disregard of the safety of the inhabitants of the city and passengers upon said streets; that plaintiff's intestate, while passing along said street on his ordinary business, without any fault on his part, or connection with said assemblage, was struck and killed by a fragment of an anvil shattered by the explosion of powder in it.

The third count set forth the duty resting upon the defendant, under its charter, to remove and abate all nuisances, detrimental to the health and safety of the inhabitants, and passengers along its streets and highways; and that defendant, in utter disregard of its duty, allowed the explosion of powder between anvils, in the heart of the city, by a large assemblage of persons, to the great terror and danger of the inhabitants and persons in its highways and streets, notwithstanding defendant was importuned not to allow such gathering and explosion of powder, and had ample time and opportunity after notice to prevent it; and that by reason thereof, and the negligence of defendant, plaintiff's intestate, while passing by on the sidewalk, was stricken by a fragment of an anvil, which burst from the explosion of powder, and was thereby killed, wherefore this suit, &c.

The fourth count was similar to the third, except that it alleged that defendant had notice in advance that the meeting would assemble, for a sufficient length of time to have prevented it, and also knew of the purpose of the assemblage to explode powder between anvils, and notwithstanding importunities to prevent such explosion of powder, failed and refused to do so, although it had ample police force, and power to enforce its commands in the premises.

JUDGE & HOLTZCLAW, and RICE, JONES & WILEY, for appellant.

ELMORE & GUNTER, *contra.*

BRICKELL, C. J.—The proposition on which appellant relies to support the action is, that the act of incorporation imposes on the city the specific duty of keeping in repair the streets within its territorial limits. The inhabitants are relieved from working on roads and highways without the city, because of the imposition of this duty, and in consideration of its performance. The duty is, therefore, an absolute and perfect corporate duty; and when injury results

to an individual from an omission or neglect to perform it, an action for damages may be supported. The correctness of the proposition is not disputed. It is asserted in our own case of *Smoot* v. *Mayor, &c.,* 24 Ala. 112; and is maintained by the current of decision in our sister States, and by the decision of the supreme court of the United States. *Weightman* v. *Washington,* 1 Black, U. S. 39; 2 Dill. Mun. Cor. § 789.

This duty is performed, when the streets are kept in such condition that they are safe and commodious highways, for the use of the public in their passage over them, whether on foot, or with vehicles, and free from obstructions. It is said by Judge Dillon, speaking of the statutes of the New England States, imposing on towns the duty of keeping highways in repair: "Generally speaking, it may, perhaps correctly, be said, that under these statutes, a town or city, charged with the duty of keeping its highways or streets in repair, performs that duty when the traveled way is without obstruction or structural defects which endanger the safety of travelers, and is sufficiently level and smooth, guarded by railings where necessary, to enable persons, by the exercise of ordinary care, to travel with safety and convenience." 2 Dill. Mun. Cor. § 788. The words of the act of incorporation are, "The streets and highways in said city shall be *kept in repair* by said city." These words import, that there shall not be in the street or highway any defect or imperfection, which renders it unsafe or inconvenient for use by the public; nor any obstruction, either closing them as ways, or hindering the progress of those passing them. They refer to the condition of the street, as the same words, employed in the lease of a house, would refer to the condition of the house. They have no reference to violence, or disorderly conduct of individuals in the streets, which may temporarily endanger the security of those who are passing them. A tenant, bound to keep a house in repair, could not be charged with a breach of the duty, because of a disorderly assemblage in it, disturbing the peace of its inmates, or of the neighborhood, not spoiling or injuring the house. Nor would a turnpike company fail in its duty to keep its road in repair, because a riot occurred on the road, rendering travel dangerous during its continuance. The corporate duty of the city, to keep its streets in repair, was performed, when the streets were free from "obstructions, or structural defects," and in a condition for safe and convenient passage.

It is not averred that, in this respect, there was any breach of duty, nor that the death of the intestate was caused by the

34

[Campbell *v.* City Council of Montgomery.]

ill repair of the streets. The assemblage, and the dangerous and unlawful practices in which they engaged, with the knowledge of the corporate officers, and without any effort by them for prosecution of these practices, is treated by the complaint, and by the argument of appellant's counsel, as a defect in, or obstruction of the streets, from which the death of the intestate resulted. Though temporarily the assemblage may have blocked the streets from passage, and the explosion of powder in anvils may have endangered the safety of those on or near the streets, it would be a strangely latitudinous use of words to say thereby the streets were out of repair.

The death of the intestate was not caused by the condition of the street, but by the unlawful act of those who had assembled in it. The case is not distinguishable from the case of *Boyland* v *City of New York*, 1 Sandf. Sup. Ct. 27. A committee of the common council, acting with a committee of citizens, called a public meeting in one of the parks of the city, for the consideration of national affairs. While the meeting was in session, sundry persons were engaged in firing cannon in the park ; and, through their carelessness, the plaintiff, while passing, was seriously injured by one of the discharges. It was held, that the city was not liable for injuries inflicted by the negligence, recklessness, or violations of law of the persons engaged in firing the cannon. In that case, as in this, no relation whatever existed between the city and the persons whose negligence or wantonness produced the injury. Without such relation, or the breach of an *absolute, perfect* corporate duty, no liability could rest on the corporation.

A municipal corporation, like a natural person, is liable to individuals, for a violation of duty owing to them, from which they sustain injury. 2 Dill. Mun. Cor. § 761. Such corporations are also liable for the misfeasance of their servants or agents in the exercise of corporate powers, or the performance of corporate duties. *Ib.* § 764. The ground of the liability is, that the superior must answer civilly for the negligence or want of skill of his agent or servant. *Ib.* § 766. These admitted principles do not aid the appellant. The only duty resting on the corporation, under the facts stated, was the passage and enforcement of such ordinances and by-laws, as would suppress such assemblages as that described, or would prevent them from engaging in such practices in the streets. The corporation has ample power for these purposes, and the averments of the complaint indicated had fully exercised it. The power and duty is govern-

[McMullen v. The State.]

mental, not ministerial; and if there had been negligence in its exercise, no private action would lie, to redress injuries resulting therefrom. *Dargan* v *Mayor*, 31 Ala. 174; *Davis* v. *City Council*, 51 Ala.; 2 Dill. Mun. Cor. §§ 753, 754, 760.

If there was an omission of duty, contributing, directly or indirectly, to the death of the intestate, it was the omission, not of the city, but of its police. The police are public officers, whose appointment is provided for by the act of incorporation, and who are clothed with the powers, and declared *ex officio* constables within the city. No liability rests on the city for their official delinquencies. 2 Dill. Mun. Cor. § 773. We quote with approbation the following observations, from the case of *Prather* v *City of Lexington*, 13 B. Monroe, 563. "The officers of a city are *quasi* civil officers of the government, although appointed by the corporation. They are personally liable for their malfeasance, or non-feasance in office; but for neither is the corporation responsible. Omissions of a duty imposed upon them by law, productive of prejudice to an individual, is not a corporate injury. The duty of the officers of the city is prescribed by the statute, from which also they derive their power. The corporation appoints them to office, but does not, in that act, sanction their official delinquencies, or render themselves liable for their official misconduct."

The action cannot be supported, without affirming that for all violence, from which personal injuries result, committed within the city, and which a diligent observance of duty by the police could have prevented, the city is liable in damages to those injured. There is no authority for the affirmation of such a principle.

Neither count of the complaint disclosed a cause of action, and the demurrers were properly sustained. Let the judgment be affirmed.