# Lawson *v.* Alabama Warehouse Company.

*Bill in Equity by Creditor to have Conveyance of Land set aside as Fraudulent.*

1. *Fraudulent conveyance; proof of debt on bill filed to set aside.*—When a party, claiming to be a creditor of the grantor, seeks by bill in equity to set aside a conveyance as fraudulent, he must establish the existence of a debt, to the payment of which the property conveyed could be subjected, if the conveyance did not stand in the way, obstructing legal remedies; and the existence of such debt the parties claiming under the deed may dispute, requiring it to be proved, and against it they may prefer any defense, not merely personal, which the debtor could have preferred in an independent suit upon it.

2. *Bill to set aside fraudulent conveyance by judgment creditor; effect of judgment as evidence.*—A judgment against the grantor, when rendered by a court of competent jurisdiction, in the regular course of judicial proceedings, in the absence of fraud or collusion, is conclusive evidence of a debt existing at the time of its rendition, but is not evidence that the debt existed at any time anterior thereto; and hence, if the conveyance is impeached as merely voluntary, and the judgment was rendered subsequently to the execution of the conveyance, there must be other evidence of the debt; but if, as in this case, the conveyance is assailed as tainted with actual fraud, thereby rendering it void, not only as to existing, but also as to subsequent creditors, the judgment, of itself, establishes the existence of a debt, authorizing the creditor to impeach the conveyance.

3. *Same; grounds on which judgment may, and may not be contested.* The grantee in a conveyance assailed for fraud by a judgment creditor of the grantor, not being a party or privy, may contest the validity of the judgment; and in defense, he may show that the court rendering the judgment had no jurisdiction, or that there was no debt of legal obligation, or other real cause of action, or that the judgment was the result of fraud and collusion between the parties; but mere irregularities in the proceedings, or errors which the debtor has waived, or which could only be corrected on appeal or writ of error, are not available to him as a defense.

4. *Same; what does not constitute a ground for contesting the judgment.* On a bill filed by a corporation, seeking, as creditor of the grantor, to have a conveyance of land set aside as fraudulent and void, the fact that a judgment in which the demands of the corporation were merged, was rendered in the name of the stockholders, is not available as a defense to

[Lawson v. Alabama Warehouse Company.]

the parties claiming under the deed, when it is shown that the demands on which the judgment was founded, were just, and really belonged to the corporation, that the suit was commenced and prosecuted to judgment in the name of the stockholders, as beneficial owners, with the consent and by the acquiescence of the corporation, but through error and inadvertence, and there was no fraud, or collusion, or want of good faith.

5. *Same; holder of legal title to judgment necessary party.*—To the bill in such case the stockholders, holding, as they do, the legal title to the judgment, in which the demands of the corporation were merged, are necessary parties; the right and interest of the corporation in the judgment being strictly. and purely equitable.

6. *Absence of necessary parties to bill in equity; how objection on account of, made.*—It is the settled rule, that when a suit in equity can not be properly disposed of, on the merits, without the presence of absent parties, objection may be made at the hearing, or on error, or it may be taken by the court *ex mero motu.*

APPEAL from Pike Chancery Court.

Heard before Hon. H. AUSTILL.

As originally filed, this was a bill by the Alabama Warehouse Company, a body corporate under the laws of this State, and by certain named individuals, who are averred to be stockholders in said corporation, and "interested in this suit, and made co-complainants," against John R. Lawson and W. L. Jones, seeking to have a mortgage on real estate, executed by Jones to Lawson on 11th October, 1873, set aside as having been made for the purpose of hindering, delaying and defrauding the creditors of said Jones, and, therefore, as fraudulent and void as against the complainant corporation, claiming to be a judgment creditor of said mortgagor. Touching Jones' indebtedness to said corporation, the bill avers that on 31st August, 1872, said Jones applied to the Alabama Warehouse Company for a loan of money, and obtained, at that time, $1000, delivering to the company, as collateral security therefor, certain bonds of the town of Troy; that "the said Jones afterwards, during the year 1872, received from said company, at divers times, divers large sums of money, and he made several payments on the same, in the shipment of cotton to said company, and, at the end of the season, it was found that said Jones was indebted to said Alabama Warehouse Company in a large sum of money, to-wit, over one thousand dollars;" that the complainants named as stockholders brought suit against the defendant Jones on said indebtedness in the Circuit Court of Pike county, and "on the 24th day of October, 1874, the said defendant confessed judgment for the sum of five hundred dollars and costs, with leave to litigate as to the balance of said claim; and, at the spring term, 1875, of said court, judgment was rendered for the balance of said claim, amounting to six hundred and eighty seven 95-100 dollars;" that said judgments "were, at the times of their rendition, and are now the

[Lawson v. Alabama Warehouse Company.]

property of the Alabama Warehouse Company; " and that they
have never been satisfied, executions thereon having been issued
and returned " no property found." The defendants demur-
red to the bill on the ground, among others, that there was a
misjoinder of parties complainant. Thereupon the bill was
amended by striking out the names of the plaintiffs in said
judgments as parties complainant, and by averring the sale of
the Troy bonds, and a credit of the proceeds on said judgments.
Both defendants answered, Lawson averring in his answer that
he had no knowledge or information as to Jones' indebtedness,
or the rendition of the judgments against him, and; therefore,
denying the averments of the bill in reference to these matters.

The complainant, on the submission of the cause, read in evi-
dence (1) an obligation, signed by Jones, and dated 31st August,
1872, reciting that the Warehouse Company had, on that day,
advanced to him $1000 for the purpose of buying cotton, and
obligating Jones to forward to the company all cotton which he
might buy, for storage at the usual rates, and for sale at an
agreed rate of commission, and to place with the company,
within three days, certain bonds issued by the town of Troy, as
collateral security " until " he had shipped said cotton and had
paid his " note at one day after date ; " (2) an agreement also
signed by Jones, dated 12th March, 1874, reciting, in substance,
an indebtedness of $1150.52, made up of the advances of 31st
August, 1872, and other subsequent advances, for which he, on
that day, had executed his note to the company, and providing
that the Troy bonds should be held by the company as collateral
security for the payment of said note; and (3) a transcript from
the Circuit Court of Pike county of the record and proceedings
in a suit in said court, in which Thos. Pullman and others (the
stockholders mentioned in the bill), described as " copartners
doing business in the firm name of the Alabama Warehouse
Company," against the said W. L. Jones, founded on a promis
sory note for $1150.52, dated as alleged in the complaint, on
12th March, 1874, and payable to the " Alabama Warehouse
Company " one day after date, in which a judgment was ren-
dered, by confession, on 24th October, 1874, for $500, and the
cause continued for litigation as to balance claimed, and in
which another judgment was also rendered, on 17th April, 1875,
on verdict, for $687.95. Other than this documentary evidence,
to which no objection was made, no testimony was introduced
as to Jones' indebtedness to the complainant; nor was any evi-
dence introduced by the defendants for the purpose of assailing
the transactions between the company and Jones, or of showing
fraud, collusion or bad faith by them or either of them. It
was also shown that the indebtedness, at the time the suit was
brought, and the judgments rendered thereon belonged to the

[Lawson v. Alabama Warehouse Company.]

corporation. Evidence was also introduced by both parties on the question of fraud *vel non* in the execution of the mortgage sought to be set aside, which need not be set out. So far as disclosed by the record, no objection was made in the court below to the failure to make the plaintiffs in the judgments parties.

On the hearing, had on pleadings and proof, relief was granted to the complainant; and that decree is here assigned as error.

RICE & WILEY, for appellants.

N. W. GRIFFIN and CLOPTON, HERBERT & CHAMBERS, *contra.*

BRICKELL, C. J.—It is an incident of the "absolute power which a man possesses over his own property, that he may make any disposition of it in which he does not interfere with the existing rights of others, and such disposition, if it be fair and real, will be valid. The limitations on this power are those only which are prescribed by law."—*Sexton v. Wheaton*, 8 Wheat. 229. The statute of frauds avoids gifts or conveyances only as to creditors or purchasers—the only persons whose rights are interfered with, and who can from them sustain legal injury. Between the parties and their privies, they are valid, and have the same operation and effect, as if they were untainted with a covinous intent, and founded on an adequate valuable consideration. Strangers have no right or interest in questioning, and are not permitted to impeach them. The primary fact, of consequence, when a party claiming to be a creditor avers a gift or conveyance to be in fraud of his rights, is the existence of a debt, to the payment of which the property conveyed could be subjected, if the gift or conveyance did not stand in the way, obstructing legal remedies. The parties claiming under the gift or conveyance may dispute the existence of the debt, may require it to be proved, and may prefer against it any defense, not merely personal, which the debtor could have preferred in an independent suit upon it.—*Halfman v. Ellison*, 51 Ala. 543; *Pickett v. Pipkin*, 64 Ala. 520.

While, as owner, it is an incident of his power to make such dispositions of his property as he may choose, if the limitations the law imposes on the power are not offended, so in the creation of debts, in establishing between himself and others the relation of debtor and creditor, the debtor is accountable to no one unless he acts *mala fide.—Candee v. Lord*, 2 Comst. 269. Therefore, a judgment against the donor, or grantor, whether rendered prior, or subsequent to the gift or conveyance, is competent evidence of the debt, of the fact that the party in whose

favor it was rendered, stands· in a relation to be injured and affected by the gift or conveyance.    When rendered by a court of competent jurisdiction, in the regular course of judicial proceedings, in the absence of fraud or collusion, it is conclusive evidence of a debt existing at the time of its rendition.—*Dubose v. Young*, 14 Ala. 139 ; *Snodgrass v. Br. Bank Decatur*, 25 Ala. 161 ; *Troy v. Smith*, 33 Ala. 469.    It is not evidence of an indebtedness existing at any time anterior to its rendition ; and if the conveyance is impeached as merely voluntary, as wanting only in a valuable consideration, if the time of rendition is subsequent to the conveyance, there must be other evidence than the judgment affords to show the existence of the debt when the conveyance was made.    But if, as in the present case, the gift or conveyance is assailed · as tainted with actual fraud, as having been made with the intent to hinder, delay, or defraud existing creditors, it is void, not only as to such creditors, but as to subsequent creditors ; and the judgment, of itself, establishes the right of the creditor to impeach the gift or conveyance.—*Elliott v. Horn*, 10 Ala. 348 ; *Thomas v. DeGraffenreid*, 17 Ala. 611 ; *Foote v. Cobb*, 18 Ala. 585 ; *Huggins v. Perrine*, 30 Ala. 396.

The donee or grantee may contest the validity of the judgment—he is not a party or a privy to it.    The want of jurisdiction in the court to render it ; the want of a debt of legal obligation, or of any real cause of action to support it ; that it is the result of fraud and collusion between the parties to it, may be shown.    But irregularities in the course of the proceedings can not be drawn in question collaterally, and can not be inquired into ; nor can any errors which the debtor has waived, or which could be corrected only by an appeal or writ of error to a superior tribunal, be taken advantage of, or made available. *Pickett v. Pipkin, supra.*

The action at law against the mortgagor, it may be, could have been successfully defended upon the ground that the plaintiffs therein had not, as they alleged, the beneficial ownership in the demands upon which it was founded.    The defense could have been made only by verified plea, and if in that form it was not interposed, it was waived.    The justness of the debts or demands is now fully proved, and all that can be said is, that parties, not having in them a sufficient legal or equitable interest to maintain an action at law, were suffered to proceed to judgment.    It is now insisted that the mortgagee ought not to be concluded by the laches of the mortgagor in making defense against the suit at law.    We think otherwise, in view of the particular facts of the case.    It is apparent that the commencement of the suit at law, and its prosecution to judgment in the name of the stockholders of the company, as the benefi-

[Lawson v. Alabama Warehouse Company.]

cial owners of the demands upon which it was founded, instead of the name of the company to whom they really belonged, was an error or inadvertence. The suit was commenced and prosecuted with the consent and by the acquiescence of the company now claiming the judgments as its property. There was no fraud or collusion, or want of good faith. The plaintiffs in the judgments, in this state of facts, hold them as mere trustees of the company, and there is no opportunity for vexing the debtor, or those claiming under him with double litigation, or subjecting them to double liability for the same cause. The case would be different, if the mortgagor had, subsequently to the mortgage, submitted to a judgment, not founded on a real debt, or a just cause of action; or if he had suffered a judgment rendered against him on a real debt, at the suit of parties having no interest in it, and not acting with the consent of the creditor having the right and interest.

The judgments have merged the simple contracts on which they are founded, and the right and interest in them which the appellee asserts, are strictly and purely equitable. The legal title to the judgments resides in the plaintiffs in whose favor they were rendered, who may exercise it not only to the prejudice of the appellee, but to the injury of the mortgagor and mortgagee, driving one or the other party to the circuitous process of other suits for the purposes of protection. A court of equity requires the person having the legal title to the subject-matter of suit to be made a party, either as plaintiff or defendant, though he may not have a beneficial interest, so that the legal title may be bound by the decree.—Story's Eq. Pl. § 153; *Plowman v. Riddle*, 14 Ala. 169. When a bill is brought by the assignee, or other equitable holder of a judgment, to obtain satisfaction through a decree of the court, the assignor, or the party having the legal title is a necessary party, in whose absence a decree will not be rendered.—*Cathcart v. Lewis*, 1 Vesey, jr., 463.

It is the settled rule, that when a suit in equity can not be disposed of properly on the merits, without the presence of absent parties, objection may be made at the hearing, or on error; and in the absence of an objection, it may be taken by the court *ex mero motu.*—*Goodman v. Benham*, 16 Ala. 625; *McMaken v. McMaken*, 18 Ala. 576; *Woodward v. Wood*, 19 Ala. 213; *Prout v. Hoge*, 57 Ala. 28; *Dooley v. Villalonya*, 61 Ala. 129.

Originally, the plaintiffs in the judgment were made parties complainant. A demurrer was interposed, founded on the hypothesis, that the fair intendment from the bill was, that they were joined merely because they were the stockholders of the company. That may have been, and was, perhaps, the idea of

[Seals v. Edmondson.]

the pleader in framing the bill, and if they had borne no other relation to the subject-matter of the suit than that of stock-holders, the bill was obnoxious to demurrer. The appellee submitted to the demurrer, and amended the bill by striking out the plaintiffs as parties. If there had been a clear and or-derly statement of the facts, showing there was a necessity for their presence as parties, because in them resided the legal title to the judgments at law, and that between them and the ap-pellees there was no conflict of interest, the demurrer would have been frivolous. However that may be, it would violate the policy of the court, if a decree were sustained which can not be safely obeyed, because of the absence of parties whose presence is necessary to quiet the litigation. We are con-strained upon this ground to reverse the decree of the chancel-lor and to remand the cause. We forbear the expression of an opinion upon the merits of the controversy, as the case may hereafter be presented upon a different state of facts.