JOHN DANAHER, as Administrator, etc., Appellant, *v.* THE CITY OF BROOKLYN, Respondent.

In an action to recover damages for the death of D., plaintiff's intestate, alleged to have been caused by drinking unwholesome water from a well, used gratuitously by the public, belonging to defendant, and under its control, it was not claimed either that the well or pump was improperly constructed or out of repair, that the water became unwholesome from any defect in the well, or from any external exposure which could, by any reasonable care, have been avoided; that defendant, or any of its officers, or anyone, did anything to render the water impure;

that anything could have been done to purify it or prevent its impurity which could only be discovered by a careful chemical analysis; or that defendant, prior to the death of D., had notice of the unwholesome character of the water. The well had been extensively used for years, and there was no proof that prior to August, 1882, the water had caused any injury. D. died August 24, 1882. The plaintiff was nonsuited. *Held*, no error; that while it was the duty of defendant to use reasonable diligence to keep the well in repair and to guard against any dilapidation or danger resulting from its use, it was not an insurer of the quality of the water, and to authorize a recovery it was necessary for plaintiff to show willful misconduct or culpable neglect, and this the evidence failed to do.

*Milnes* v. *Mayor, etc.* (L. R. [10 Q. B. Div.] 124; 12 id. 443); *Vosper* v. *Mayor, etc.* (17 J. & S. 296); *Howard* v. *Legg* (11 N. E. 614); *Jones* v. *New Haven* (34 Conn. 13); *Norristown* v. *Moyer* (67 Penn. St. 355); *People* v. *Albany* (11 Wend. 539); *Nevins* v. *City of Peoria* (41 Ill. 502); *Shawneetown* v. *Mason* (82 Ill. 337); *Rex* v. *Medley* (6 C. & P. 292); *Goldsmid* v. *T. W. I. Co.* (L. R. [1 Eq. Cas.] 161); *Charles* v. *F. L. Board* (52 L. J. [N. S.] 554); *Brown* v. *Illius* (27 Conn. 84); *Ballard* v. *Tomlinson* (L. R. [29 Ch. Div.] 115), distinguished.

(Argued January 15, 1890; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made September 11, 1889, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at circuit.

This action was brought to recover damages for the death of Thomas P. Danaher, plaintiff's intestate, alleged to have been caused by drinking from a public well belonging to the defendant, the water from which was poisonous and unwholesome. The deceased died August 24, 1882, from typhoid dysentery.

The material facts are stated in the opinion.

*Franklin M. Danaher* for appellant. The trial court erred in directing a nonsuit. (*Bagley* v. *Bowe*, 105 N. Y. 179; *Payne* v. *T. & B. B. N. Co.*, 83 N. Y. 574; *Barnes* v. *Snowden*, 12 Atl. 304–307; *Walton* v. *Ackerman*, 10 id. 709; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 466;

*Hart* v. *B. Co.*, 80 id. 662; *Tuft* v. *City of Troy*, 18 Wkly. Dig. 478; *Carl* v. *Ayers*, 53 N. Y. 17; *Rehberg* v. *Mayor, etc.*, 91 id. 141; *Cook* v. *N. Y. C. R. R. Co.*, 1 Abb. Ct. App. Dec. 432; *Clemence* v. *City of Auburn*, 66 N. Y. 338; *Ernst* v. *H. R. R. R. Co.*, 35 id. 41; *Bernhart* v. *R. & S. R. R. Co.*, 1 Abb. Ct. App. Dec. 134; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 455; *Morrison* v. *N. Y. C. & H. R. R. R. Co.,*, 63 id. 643; *Powell* v. *Powell*, 71 N. Y. 71; *Fitzpatrick Case*, 21 W. D. 98; 98 N. Y. 649; *Donnelly* v. *B. C. R. R. Co.*, 109 id. 22; *Gonzalez* v. *R R. Co.*,'38 id. 440; *Neundorf* v. *Ins. Co.* 69 id. 393; Baylies' N. T. & App. 504, 505.) The city of Brooklyn is charged by law with the duty of maintaining and repairing its public wells and pumps within its corporate limits. (Laws of 1873, chap. 863; 1 Blackstone's Com. 147; Laws of 1880, chap. 377, §§ 1-6; *Weed* v. *Brockport*, 16 N. Y. 170; *Fitzpatrick* v. *Slocum*, 89 N. Y. 365; *N. Y. & B. L. M. & L. Co.* v. *Brooklyn*, 71 id. 583-4; *Walsh* v. *New York*, 107 id. 220; *Ehrgott* v. *Mayor, etc.*, 96 id. 272-3; *Barnes* v. *Dist. of Col.*, 91 U. S. 540; *Polley* v. *Buffalo*, 20 W. D. 163; *Kunz* v. *City of Troy*, 104 N. Y. 344-8.) The city of Brooklyn furnishes drinking water to its inhabitants, in its private as distinguished from its public capacity, and is liable for a failure to use its power well or for an injury caused by using it badly, and for negligence, the same as an individual under similar circumstances. (*Maximillian* v. *Mayor, etc.*, 62 N. Y. 160-164; 1 S. & R. on Neg. [4th ed.] § 255; Cooley's Const. Lim. 306; *Conrad* v. *Ithaca*, 16 N. Y. 158; *Small* v. *Inhabitants*, 51 Me. 362; *G. Co.* v. *San Francisco*, 9 Cal. 453; *Lloyd* v. *Mayor, etc.*, 5 N. Y. 374; *Bailey* v. *Mayor, etc.*, 3 Hill, 331; *Oliver* v. *Worcester*, 102 Mass. 500; *City of Detroit* v. *Cary*, 9 Mich. 165; 4 Wait's Act and Def. 596, 615; Dillon on Mun. Corp. [3d ed.] § 58; Wharton on Neg. §§ 250, 251; 2 Addison on Torts, 1300; *Barnes* v. *Dist. of Col.*, 91 U. S. 540; *Weightman* v. *Washington*, 1 Black, 39; *Richards* v. *Mayor, etc.*, 16 J. & S. 315; *Nebraska City* v. *Campbell*, 2 Black, 590; *Bailey* v. *Mayor of N. Y.*, 3 Hill, 531; 23 N. Y. 325; 53 id. 141; *McEvoy* v. *Mayor,*

*etc.*, 54 How. Pr. 245; *Benson* v. *Mayor, etc.*, 16 Barb. 223, 235; *Fleming* v. *Suspension Bridge*, 92 N. Y. 372; *Peo.* v. *Civil Service of N. Y.* 17 Abb. [N. C.] 64; *Britton* v. *Mayor, etc.*, 21 How. Pr. 253; *Milhau* v. *Sharp*, 15 Barb. 193, 213; *Lowber* v. *Mayor, etc.*, 5 Abb. 251, 268; *Remney* v. *Gedney*, 57 How. Pr. 221; *W. S. F. Society* v. *Philadelphia*, 31 Penn. St. 183; *People* v. *Hulbert*, 24 Mich. 44, 103; *Board* v. *Detroit*, 28 id. 202, 238; *Intendent* v. *Pippin*, 31 Ala. 542; *Mayor, etc.*, v. *Cabot*, 28 Ga. 50; *Wells* v. *Mayor*, 43 id. 67; *McKnight* v. *New Orleans*, 24 La. Ann. 412; *Grant* v. *Davenport*, 36 Iowa, 396; *Hale* v. *Haughton*, 8 Mich. 458; *Indianapolis* v. *G. Co.*, 66 Ind. 396; 9 Cal. 453; 14 Gray, 543; 102 Mass. 500; 36 N. H. 284–291.) The city having erected the pumps, assumed the duty of keeping them in repair, and for negligence in not so doing, is liable the same as an individual. (Cooley on Const. Lim. [5th ed.] 310; *Henly* v. *Mayor, etc.*, 5 Bing. [N. C.] 91, 222; 4 Wait's Act. & Def. 641; Dillon on Mun. Corp. [3d ed.] §§ 1048, 1049; Wharton on Neg. §§ 250, 251, 263; Addison on Torts, 1304–5, 1311–13; *Barnes* v. *Dist. Columbia*, 91 U. S. 540; 36 N. Y. 54; 46 id. 196; 32 id. 489; 50 id. 238; 5 id. 374–5; 59 id. 500; 1 Denio, 595; 3 N. Y. 463; 3 Hill, 612; Id. 531; 61 Barb. 511; 9 N. Y. 163, 169; 3 Duer, 406; 51 N. Y. 506; 2 id. 173; 24 Hun, 12; 29 id. 528; 126 Mass. 324; 104 id. 13; 109 id. 107; 4 Allen, 41–51; 37 Mich. 153; 10 Abb. [N. S.] 192; *Gray* v. *City of Brooklyn*, 59 N. Y. 500–508; *Weightman* v. *Washington*, 1 Black, 39; *Nebraska City* v. *Campbell*, 2 id. 590–2; *Hardy* v. *City of Brooklyn*, 90 N. Y. 441; *Urquhart* v. *City of Ogdensburg*, 91 id. 67–71; *Siefert* v. *City of Brooklyn*, 101 id. 136.) It was the duty of the city to investigate the condition of its wells and pumps and a failure to do so was negligence. (*McCarthy* v. *Syracuse*, 46 N. Y. 194; *Brusso* v. *Buffalo*, 90 id. 679; *Jones* v. *New Haven*, 34 Conn. 6; *Rehrberg* v. *Mayor, etc.*, 91 N. Y. 138, 145; *City* v. *Crawford*, 53 Am. Rep. 753; *Vosper* v. *Mayor*, 17 J. & S. 296; *Requa* v. *Rochester*, 45 N. Y. 129; 36 id. 54; 61 id. 506; *State* v. *Portland*, 43 Am. Rep. 586; *Chicago* v. *Mayor, etc.*, 18 Ill. 349; *Vanderslice*

v. *Philadelphia*, 28 A. L. J. 591; Addison on Torts, 1312, 1313; Wharton on Neg. §§ 291, 963, 965; 3 T. & C. 504, 505; 67 Penn. St. 355; 82 Mass. 508; *County* v. *Howard*, 11 N. E. 612; *Post* v. *Clark*, 35 Conn. 342; *Hunt* v. *Mayor, etc.*, 20 J. & S. 198; 109 N. Y. 134.) Notice of a defective condition is presumed when ignorance is not compatible with the exercise of reasonable official care. (*Dotton* v. *Albion*, 15 N. W. Rep. 46; *City of Boulder* v. *Niles*, 12 Pac. Rep. 632; *Chicago* v. *Dalle*, 5 N. E. Rep. 572; *Hancomb* v. *Boston*, 141 Mass. 242–5.) When the accident is such as in the ordinary course of events does not happen if reasonable care is used, in the absence of explanation it affords sufficient evidence that the accident arose from want of care on its part. (*Breen* v. *N. Y. C. R. R. Co.*, 109 N. Y. 297; *Milnes* v. *Mayor of Huddersfield*, L. R. [10 Q. R. Div.] 124; 12 id. 443; *Chapman* v. *City of Rochester*, 110 N. Y. 273; *Van Wormer* v. *Mayor, etc.*, 15 Wend. 203–205.) It is no excuse that the pump water was outwardly pure and its poisoned condition not manifest to ordinary observation. The city is chargeable with notice of the operations of the natural law of decay. It was its duty to anticipate dilapidation and decay; to inspect the well, and call to its assistance those whose skill would have enabled it to ascertain its condition. (*Vosper* v. *Mayor, etc.*, 17 J. & S. 296; *County of Howard* v. *Legg*, 11 N. E. Rep. 614; *Indianapolis* v. *Scott*, 72 Me. 197; *Rapho* v. *Moore*, 68 Penn. St. 408; *Jones* v. *New Haven*, 34 Conn. 13; 74 N. Y. 273; 91 id. 145; *Rehrberg* v. *Mayor, etc.*, 91 id. 145.) The city ought to have foreseen that such a condition of its drinking water might occur, and the omission to provide against it is actionable negligence. (*Loftus* v. *U. F. Co.*, 84 N. Y. 460.) There was sufficient evidence of notice to the city of the poisonous condition of this water. (*Bagley* v. *Bowe*, 105 N. Y. 179; *Turner* v. *Newburgh*, 109 id. 301; Dillon on Mun. Corp. § 144, 237, 262; *Rehrberg* v. *Mayor*, 91 N. Y. 138–145; *Twogood* v. *Mayor, etc.*, 102 id. 216–219.) The court erred in dismissing the complaint for want of notice, as the pump was a city structure erected and maintained by the defendant for drinking

purposes. The water in it having become impure, poison-
ous and dangerous to human life and health, it was a public
nuisance, and the municipality is liable for all damages sus-
tained by reason of its existence, in tort, for the wrongful act
of maintaining it, irrespective of any question of negligence or
notice. (*Shawneetown* v. *Mason*, 82 Ill. 337–341 ; *Hamilton*
v. *Mayor*, etc., 52 Ga. 435 ; *Nevins* v. *City of Peoria*, 41 Ill.
502 ; *People* v. *City of Albany*, 11 Wend. 539, 543 ; Wood on
Nuisance, §§ 784, 833 ; Gould on Waters, § 212 ; *Mills* v. *Hall*,
9 Wend. 315 ; Wood on Nuisances, 749, § 784; 4 Wait's Act.
& Def. 765 ; Addison on Torts, 1315 ; Wharton on Neg.
§§ 187, 259, 265 ; *Brower* v. *Mayor, etc.*, 3 Barb. 254 ; *Irvine*
v. *Wood*, 51 N. Y. 224–8 ; *Congreve* v. *Smith*, 18 id. 79, 82–4 ;
*Hume* v. *Mayor, etc.*, 74 id. 264 ; *Clifford* v. *Dam*, 81 id. 52 ;
*Dickinson* v. *Mayor, etc.*, 92 id. 588 ; *Creed* v. *Hartman*, 29
id. 585 ; Laws of 1873, chap. 863, § 13 ; *Wormsley* v. *Church*,
17 L. T. [N. S.] 190 ; *Hodgkinson* v. *Ennor*, 4 B. & S. 229 ;
*Whailey* v. *Lang*, 3 H. & N. 675 ; *Chapman* v. *Rochester*,
110 N. Y. 273.) The court erred in taking the case from the
jury for want of proof of notice, because the defendant is
liable in tort for furnishing impure and poisonous drinking
water, upon the ground of a violated or neglected duty volun-
tarily assumed, irrespective of any question of negligence or
notice, or of any privity of contract between the parties.
(*Norton* v. *Sewell*, 106 Mass. 143; *Bishop* v. *Weber*, 139 id.
417 ; *Fitzpatrick* v. *G. & W. P. F. Co.*, 49 Hun, 288.) The
city erected and maintained the pump and assumed the duty of
providing for the health, safety and protection of its citizens who
drank of this water, and is liable for any injuries sustained by
such person by reason of the poisonous condition of the water,
irrespective of any question of notice or negligence. (*Archer*
v. *N. Y., etc., R. R. Co.*, 106 N. Y. 589, 597; *Turner* v.
*Newburgh*, 109 id. 301 ; *Jetter* v. *H. R. R. Co.*, 2 Abb. Ct.
App. Dec. 458; *Weston Case*, 73 N. Y. 595 ; *Brassell Case*,
84 id. 246 ; *Newson Case*, 29 id. 383, 390; *Chaffee Case*, 104
Mass. 107, 115; *Brusso* v. *Buffalo*, 90 N. Y. 679; *McGuire*
v. *Spence*, 91 id. 303 ; *Todd* v. *City of Troy*, 61 id. 510; *Barton*

v. *City of Syracuse,* 36 id. 55; *Weston* v. *E. R. R. Co.,* 73 id.
595; 18 Ill. 349; *Hazeman* v. *Hoboken,* 50 N. Y. 60; *Gilbert*
v. *Hoffman,* 32 N. W. 632; *Bishop* v. *Weber,* 139 Mass.
417; 11 N. E. Rep. 612; 2 S. E. Rep. 627; 13 Pac. Rep.
657; 19 Wkly. Dig. 76; 20 id. 7, 8, 9; 16 id. 222;
*Jennings* v. *Van Schaick,* 37 Alb. L. J. 292; *Indiana*
v. *Barnhart,* 16 N. E. Rep. 121–125; *Marcellis* v. *How-
land,* Id. 883; *Requa* v. *Rochester,* 45 N. Y. 134; *Fitz-
patrick* v. *G. & W. P. F. Co.,* 49 Hun, 288; *McMahon* v.
*Mayor,* 33 N. Y. 642; 38 id. 459; *Birkett* v. *K. I. Co.,* 110
id. 504; *Mangan* v. *B. R. R. Co.,* 38 N. Y. 461;
*McGarry* v. *Loomis,* 63 id. 108; *Fallon* v. *Central Park,*
64 id. 13, 17; *Chicago* v. *Mayor, etc.,* 18 Ill. 349; *Chicago*
v. *Hessing,* 83 id. 204; *Drew* v. *R. R. Co.,* 26 N. Y. 49;
*Kunz* v. *City of Troy,* 104 id. 251; *Dorlon* v. *N. Y. C. & H.
R. R. R. Co.,* 90 id. 670, 671; *Bryne* v. *R. R. Co.,* 83 id.
620; *Reynolds' Case,* 58 id. 248; *Thurber* v. *Harlem,* 60
id. 326; *Mangan* v. *R. R. Co.,* 38 id. 458; *Wendell* v.
*R. R. Co.,* 91 id. 420; 24 How. Pr. 17; 17 Wkly. Dig.
33; Abb. T. Ev. 597; 44 Am. Rep. 586; 42 id. 418;
*Barry* v. *N. Y. C. & H. R. R. R. Co.,* 92 N. Y. 229; *Drew*
v. *R. R. Co.,* 26 id. 49; *McGovern* v. *R. R. Co.,* 67
id. 421; *Morrison* v. *R. R. Co.,* 63 id. 614; *Johnson*
v. *R. R. Co.,* 20 id. 45; *Hart* v. *B. Co.,* 80 id. 622.)
The motion to dismiss the complaint " because no action lies
against the city of Brooklyn for want of repair, or acts of the
department of public health, in the discharge of this quasi-
governmental duty," was properly denied. (Dillon on Mun.
Corp. § 144; *Board of Health* v. *Heister,* 37 N. Y. 671, 672;
*Kunz* v. *City of Troy,* 104 N. Y. 344; *Walsh* v. *Mayor, etc.,*
107 id. 224; *Ehrgott* v. *Mayor, etc.,* 96 id. 264; *Mills* v. *City
of Brooklyn,* 32 id. 494; *N. Y. & C. Co.* v. *City of Brook-
lyn,* 71 id. 583; *Fitzpatrick* v. *Slocum,* 89 id. 363, 366;
*Polly* v. *City of Buffalo,* 20 Wkly. Dig. 163; *Vincent* v.
*City of Brooklyn,* 31 Hun, 122; *Fitzgerald* v. *City of Bing-
hamton,* 40 Hun, 332; *Weed* v. *City of Brockport,* 16 N. Y. 160.)
The motion to dismiss the complaint because " the city is not

liable under the exemption clause of its charter" was properly denied. (*Billin* v. *City of Brooklyn*, 9 N. Y. S. R. 690; *Fitzpatrick* v *Slocum*, 89 N. Y. 365; *Barnes* v. *Dist. Col.*, 91 U. S. 540; *McAvoy* v. *Mayor, etc.*, 54 How. Pr. 245; 3 T. & C. 505; 3 Hill, 531; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 265–272, 273; Laws of 1816, chap. 95; Laws of 1827, chap. 155, §§ 13, 23; Laws of 1833, chap. 319; Laws of 1834, chap. 92, § 23; Laws of 1850, chap. 47, § 26; Laws of 1854, chap. 384, § 1; Laws of 1865, chap. 721; *Adsit* v. *Gray*, 4 Hill, 304; 40 Am. Dec. 305; *Bennett* v. *Whitney*, 94 N. Y. 308; *Hines* v. *Lockport*, 50 id. 238; *Getty* v. *Staintin*, 46 Hun, 1–5; *Hover* v. *Barkhoff*, 44 N. Y. 113–118; 78 id. 314; Whart. on Neg. § 191; 16 N. Y. 170; *Sage* v. *City of Brooklyn*, 89 id. 189, 200; *Fitzpatrick* v. *Slocum*, 89 id. 358; *Hardy* v. *City of Brooklyn*, 90 id. 435; *Seifert* v. *City of Brooklyn*, 101 id. 136; *Vincent* v. *City of Brooklyn*, 31 Hun, 122; *Fitzgerald* v. *City of Binghamton*, 40 id. 332.) The court erred in refusing to allow the plaintiff to submit to the jury the question as to whether the use of this well water caused the death in question. (*Bagley* v. *Bowe*, 105 N. Y. 179; *Payne* v. *R. R. Co.*, 83 id. 574; *Stackus* v. *R. R. Co.*, 79 id. 466; *Hart* v. *H. R. B. Co.*, 80 id. 622; *Carl* v. *Ayers*, 53 id. 17; *Clemence* v. *City of Auburn*, 66 id. 388; *Justice* v. *Lang*, 52 id. 323; *White* v. *B. & A. R. R. Co.*, 11 N. E. Rep. 552–554.) This is not a case of *damnum absque injuria*. (*Seifert* v. *City of Brooklyn*, 101 N. Y. 136–144; *Ratcliff* v. *Mayor, etc.*, 4 id. 195.) The court erred in excluding the record evidence of the condition of this water contained in the minutes of the common council and of the department of health, and compelling plaintiff to make common law proof of facts which were of public record. (Laws of 1880, chap. 545, § 2; Code Civ. Pro. §§ 933, 941; *Denning* v. *Roome*, 6 Wend. 651; *Wood* v. *Jefferson*, 9 Cow. 205; *Turnpike Co.* v. *McKean*, 10 Johns. 154; Laws of 1878, chap. 219; Laws of 1879, chap. 211, 531; 1 Dillon on Mun. Corp. 373, 414, 422; *Meeker* v. *Van Rensselaer*, 15 Wend. 400; *Van Wormer* v. *Mayor, etc.*, Id. 262; *Napman* v. *People*, 19 Mich. 352.) The trial court

erred in excluding evidence of the cost and expenses of the dead child's sickness. (*Murphy* v. *R. R. Co.*, 88 N. Y. 446; *Leeds* v. *M. G. Co.*, 90 id. 29; *Metcalf* v. *Baker*, 57 id. 662; *West* v. *M. R. Co.*, 1 N. Y. Supp. 519; *Cuming* v. *B. R. R. Co.*, 109 N. Y. 97.)

*Almet F. Jenks* for respondent. The plaintiff failed to make out a case irrespective of the question of municipal liability. (*Searles* v. *M. R. R. Co.*, 101 N. Y. 661; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 id. 332.) The city is not an insurer. There must be notice, actual or constructive. (*Todd* v. *City of Troy*, 61 N. Y. 509.) There was not sufficient proof of any negligence on the part of the city to warrant a refusal to dismiss the complaint. (*Wiles* v. *H. R. R. R. Co.*, 24 N. Y. 433; *Johnson* v. *H. R. R. R. Co.*, 20 id. 65; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 id. 333; *Wendell* v. *N. Y. C. & H. R. R. R. Co.*, 91 id. 420; *Reiseman* v. *Havermann*, 84 id. 647.) In any view of the case there was no liability of the city of Brooklyn. (Laws of 1875, chap. 633, tit. 12, § 1, p. 794; 2 Common Council Minutes, 1875, 807, 819; 2 id. 1887, 872; Documents, 1877, 1089; *Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160; *Bamber* v. *City of Rochester*, 97 N. Y. 625; *Ogg* v. *City of Lansing*, 14 Am. Rep. 499; *Heiser* v. *Mayor, etc.*, 104 N. Y. 68.) The fact that the city officers acted on the report that the water was unwholesome is immaterial. (*Hunt* v. *Mayor, etc.*, 109 N. Y. 134; 16 N. E. Rep. 320.) The doubts of an expert are not admissible in evidence. (*Sanchez* v. *People*, 22 N. Y. 137.)

EARL, J. We entertain no doubt that this well in DeKalb avenue was a public well belonging to the defendant and under its control, and that the water of the well was in August, 1882, unwholesome and dangerous to the health of such persons as should drink thereof; and we will assume (although we would hold so with some hesitation), that the death of plaintiff's intestate was caused by drinking of the water; and yet we think the plaintiff was properly nonsuited at the trial.

There is no claim that the well or pump was improperly constructed, or out of repair, or that the water became unwholesome from any defect in the well or pump, or from any external exposure which could by any reasonable care have been avoided. It does not appear that the city, or any of its officers, or in fact that any person did anything to render the water impure. Nor does it appear that anything could have been done to purify it or prevent its impurity. The theory of the plaintiff, as developed upon the trial, was that this well was supplied by water which fell upon the surface of the surrounding earth and, by percolation through the soil, reached the bottom of the well; and that the water, upon the earth or in passing through the earth, came in contact with the unclean and deleterious substances which rendered it impure and unwholesome. The water was limpid, cold and agreeable to the taste. Its impurity could not be detected by drinking it, and its dangerous character could only be discovered by a careful chemical analysis.

This water was not furnished for a compensation paid for its use, and so there was no contract relation between the city and those who used it. The well was for public gratuitous use, and hence nothing that was said or intimated in *Milnes* v. *Mayor of Huddersfield* (L. R. [10 Q. B. Div.] 124; 12 id. 443) has any pertinency here.

The city was not an insurer of the quality of the water and bound under all circumstances to keep it pure and wholesome. This is not claimed. It owned this well as it owned its other property kept for public use, such as streets, parks and public buildings; and it owed the duty of reasonable diligence to care for it as it was bound to care for such other property. Its liability for unwholesome water in any of its public wells must rest upon negligence; and hence we are brought to the question, was there any proof of negligence imputable to the city? It is not claimed that the city had any notice of the unwholesome character of this water prior to the death of plaintiff's intestate; but the claim is that by reasonable diligence it could have had notice, and hence that notice must be imputed to it.

This well had existed for many years, and its water had been extensively used by persons in the neighborhood and there is no proof whatever that prior to the month of August, 1882, it had caused injury to anyone, or that there was the least suspicion by anyone that it was unwholesome. Several persons were called as witnesses by the plaintiff who testified that they became sick from drinking the water of this well in the early part of August, 1882. It is inferable from the evidence that the same persons drank the water previously with impunity. The plaintiff had four sons; three of them drank the water in the early part of August and became very sick, two of them dying. They had previously for years drank it without injury. The fourth son drank it down to about the first of August, and then in consequence of his absence from the city he ceased to drink it and he did not become sick. The inference therefore is, so far as there is any proof upon which to base it, that the water was wholesome, at least not dangerous and not so impure as to cause sickness, down to the first of August. In view of these facts it certainly cannot be said that there is any proof that the water was dangerous before the time it is shown to have caused any injury.

The plaintiff, claiming that the water of this well had for a long time been impure and dangerous, should have given some proof to maintain his claim, and if the claim was well founded it cannot be doubted that the proof would have been readily obtainable, as many persons must have used the water for many years.

So, while there is no proof that during any considerable time prior to the drinking of this water by the plaintiff's intestate, it had been impure, unwholesome or dangerous, there is no proof that any reasonable diligence on the part of the defendant would have discovered its impure or dangerous quality if it existed. The plain inference is that there was some cause of contamination which had not long existed. There must have been some unobserved deposit of deleterious matter at some distance from the well upon or under the sur-

face of the soil, or some new vein opened in the soil through which impure water for the first time percolated into the well in the early part of August. There is no proof or claim that any improper or poisonous substance had been thrown into the well or that the well was unclean or needed cleaning out. Assuming that the defendant was bound to make a chemical analysis of the water of its wells from time to time, how often should such analysis be made? It appears that there were 296 wells within the city limits belonging to the city. To analyze the waters of all these wells would take a long time. If the defendant were required to do it even once a quarter it would probably take the whole time of a single chemist.

But if the chemical analysis of the water of this well had been made in June, or even in July, there is no proof, and there can be no legal inference that it would have been found unwholesome; and how then can it be said that at the precise time the deceased drank of this water in August the city was bound to have discovered and known that it was unwholesome and dangerous? For aught that appears in the case the city may, from time to time, during previous months or years, have examined and tested the waters of these wells. It appears that the department of public health, about the first of June, 1882, ordered the chemist of that department to make an examination of the waters of the wells of the city, and he proceeded with such examination, but did not reach the water of the well in question until the last of August.

Here there was a well in perfect order, clean, free from filth and debris, the water of which had been used with impunity and satisfaction by those living in the neighborhood for many years, and no complaint had been made of it, and no suspicion had been raised that it was in any way unwholesome or dangerous. Under such circumstances, what was there to suggest to the city the duty of analyzing and testing the water prior to the first day of August, 1882? We find nothing.

We have thus far assumed that the city was bound, from time to time, to make a chemical examination of the waters of the public wells for the purpose of ascertaining whether they

were pure and wholesome. But we are of opinion that such assumption is not well founded, and that no such burden rests upon the city. The city has its public water-supply by running water in addition to these wells. The wells are furnished and kept for public use by the city. It was undoubtedly the duty of the city to keep the wells and pumps in good order, and to keep the wells properly cleaned out so that they would not become contaminated by anything that might be thrown into them. But these wells were to be supplied by water percolating through the earth ; and was the city bound to anticipate that such water would become impure and dangerous in the wells ? There was no proof that it was the necessary or even the natural consequence that water in city wells, wherever they may be located, will become poisonous and deleterious. On the contrary, the proof shows that the waters of such wells have been used for years with impunity. These wells were furnished for the accommodation of the public. They were not obliged to use them, and most people have sufficient knowledge to know that their waters may not be as pure as waters brought from pure streams far away from the city limits and from exposure to contamination. The public may use them, and when they are found unwholesome or deleterious, and the city has notice thereof, it is bound to protect the public health by purifying the waters or filling up the wells. The burden upon the city is sufficient if it be held to the responsibility of keeping the wells and pumps in order and clean, and if it be made liable for any injury resulting from the use of impure waters from the wells after it has had notice of their dangerous qualities, and an opportunity to remove the danger. The higher degree of diligence as to water apparently pure and wholesome, agreeable to the taste and in common use by the public without complaint, would be unreasonable.

These views are not in conflict with any of the authorities to which our attention has been called.

In *McCarthy* v. *City of Syracuse* (46 N. Y. 194), it was held that when the duty was imposed by law upon a public officer

or municipal corporation, of keeping a structure in repair, it involves the exercise of a reasonable degree of watchfulness in ascertaining the condition of such structure from time to time; and that where this is omitted such officer or corporation is liable for damages resulting from a dilapidation of the structure, which is an ordinary result of its use, and which would have been disclosed by an examination, and that no notice of the defect is necessary in such a case to fix the liability. There the damage complained of resulted from a defective sewer, and the city was under obligation to use reasonable diligence to keep it in repair, and it could not escape responsibility simply because it had no notice that the sewer was out of repair. Here it was the duty of the city to use reasonable diligence to keep this well and pump in repair, and to guard against any dilapidation or danger resulting from the well. But as we have shown there was no evidence which would justify a finding of culpable negligence as to the well on the part of the city.

In *Hunt* v. *Mayor, etc.* (109 N. Y. 134), the plaintiff was injured by an explosion of one of the man-holes of a steam heating company in one of the streets of the city of New York. He was defeated in his action for damages. Andrews, J., writing the opinion of the court, said: "The language of the cases expressing the measure of duty resting upon a municipal corporation in respect to its streets, sewers, etc., has not always been carefully guarded; but the doctrine has been frequently reiterated in this court that there is no absolute guaranty or undertaking on the part of a municipal corporation, that its streets or other constructions shall, at all times, and under all circumstances, be in a safe and proper condition, and that its obligation and duty extend only to the exercise of reasonable care and vigilence. There must be willful misconduct or culpable neglect to create liability." Here there was no willful misconduct or culpable neglect on the part of the city as to this well. Trees, bridges and other wooden structures will necessarily decay and become unsafe, and where they may thus become dangerous to human life, the duty devolves upon

the municipality to make tests and examinations, using reasonable diligence to ascertain whether they are safe or not. (*Vosper* v. *Mayor, etc.*, 17 J. & S. 296 ; *Howard* v. *Legg*, 11 N. E. 614 ; *Jones* v. *New Haven*, 34 Conn. 13 ; *Noristown* v. *Moyer*, 67 Penn. St. 355.)   But this case is not analogous to those.   Here there is no proof justifying the inference that the water of this well was constantly and inevitably exposed to impurities which would render it dangerous to human life.   On the contrary the evidence shows that up to about the first of August its waters were wholesome and free from dangerous impurities.

This is not like the cases where a city creates or permits a nuisance, or turns a stream of mud or water upon the premises of private individuals.   In such cases it is held responsible for the nuisance which it creates or permits, and for its wrongful acts.   (*People* v. *Albany*, 11 Wend. 539 ; *Nevins* v. *City of Peoria*, 41 Ill. 502 ; *Shawneetown* v. *Mason*, 82 id. 337.)

There was no proof in this case that the city in any way polluted or poisoned the water of this well or permitted others to do so, and hence the cases of *Rex* v. *Medley* (6 C. & P. 292), *Goldsmid* v. *Turnbridge Wells I. Co.* (L. R. [1 Eq. Cas.] 161), *Charles* v. *Hinckley Local Board* (52 L. J. [N. S.] 554), *Brown* v. *Illius* (27 Conn. 84), *Ballard* v. *Tomlinson*, L. R. [29 Ch. Div.] 115), are not in point.

Without commenting upon or referring to other authorities found in the interesting and learned brief submitted on behalf of the appellant, it is sufficient to say that we have examined and considered all of them and that we are not able to bring ourselves to the conclusion that there is any principle of law which, upon the facts appearing in this case, imposes any liability upon the defendant for the damages claimed.

The judgment of the General Term should, thereofore, be affirmed, with costs.

All concur.

Judgment affirmed.