### SPEIR *v*. CITY OF BROOKLYN.

*(City Court of Brooklyn, Special Term.* February 18, 1892.)

MUNICIPAL CORPORATIONS—NEGLIGENCE—FIRE-WORKS—ILLEGAL PERMIT.

   Where the mayor of a city illegally issues a permit for a display of fire-works on a street, instead of a public square, the corporation is liable for damages to property by fire resulting therefrom.

Action by S. Fleet Speir against the city of Brooklyn to recover damages resulting from a fire caused by an authorized display of fire-works. Judgment for plaintiff.

*Wm. C. De. Witt,* for plaintiff.    *Almet F. Jenks,* for defendant.

CLEMENT, C. J. The plaintiff, on November 1, 1887, was the owner and occupant of a house on Montague street, near the Academy of Music in this city, and on that evening there was a display of fire-works at the corner of Clinton and Montague streets. A political meeting was held at the academy, and the fire-works, consisting of bombs, rockets, and Roman candles, were exhibited for that reason. A permit was given by the mayor, in writing, to the person who received the contract, and such permit named the place where the fire-works should be set off. It is undisputed that the display was extensive and "unusual to have at all." The evidence discloses that a rocket entered an upper window in the house of the plaintiff, and in a few minutes fire broke out, and the house, furniture, and other property of the plaintiff were damaged by fire and water. No authority has been cited by the learned counsel for the city tending to show that it has ever been held that it is lawful to set off fire-works in a public street. On the contrary, there are several authorities holding that the discharge of fire-works on a public street is a nuisance *per se.* In *Conklin* v. *Thompson,* 29 Barb. 218, Judge JOHN W. BROWN said: "The streets of a city and highways everywhere are not unfrequently appropriated to the uses of exploding fire-crackers and similar contrivances. Such acts are nevertheless wrongful. They are tolerated, and not authorized; and those engaged in committing them assume the responsibility of all the bad consequences which ensue. Any injury to the persons of individuals, any injury to property, animate or inanimate, which results thereby, creates a liability on the part of the wrong-doer to compensate the sufferer." In the case of *Jenne* v. *Sutton,* 43 N. J. Law, 257, the plaintiff was injured by the bursting of a bomb set off on a street at a political meeting in Jersey City, and Chief Justice BEASLEY held as follows: "As the use of a public highway as a place in which to fire such an explosive was illegal, and *per se* constituted a public nuisance, there can be no question with respect to the legal liability of all persons concerned in the doing of such an act, or who caused or procured it to be done, for all the damage proximately resulting." See, also, Wood, Nuis. § 51; *Scott* v. *Shepherd,* 2 Wm. Bl. 892; *Fisk* v. *Wait,* 104 Mass. 71; *Bradley* v. *Andrews,* 51 Vt. 530; section 385, Pen. Code; *Flynn* v. *Taylor,* 127 N. Y. 599, 28 N. E. Rep. 418; *Heeg* v. *Licht,* 80 N. Y. 579; *Robinson* v. *Greenville,* 42 Ohio St. 625; *Town of*

*Rushville* v. *Adams*, 107 Ind. 475, 18 N. E. Rep. 292.    On the authorities above cited, I do not hesitate to hold that the exhibition of fire-works in Montague street on the night in question was a public nuisance.    The mayor gave the permit by virtue of an ordinance, (chapter 3, art. 5, § 14:)  "The use of fire-works of all descriptions is prohibited within the city limits, except on the whole of the 4th day of July in each and every year: provided, however, that this section shall not apply to such public displays as may be authorized by the city authorities, or such private displays as may be allowed under permit from the mayor, granted for such purpose," etc.    The ordinance was valid and legal.    It authorized the mayor to give permits for private displays at proper places.    Under it, the mayor could license exhibitions at Fort Greene park or on any public square, but not lawfully on a street.    This distinction is borne out by the authorities.    *Dowell* v. *Guthrie*, 99 Mo. 653, 12 S. W. Rep. 900; *Little* v. *City of Madison*, 49 Wis. 605, 6 N. W. Rep. 249. The city is not liable for negligence for failure to abate all nuisances in a street. In this case, if no permit had been given, there would be no liability, for it is the duty of the police force to suppress disorderly conduct in the streets.    The corporate duty as to the care of streets, where no license is given, is to keep the same in repair and free from incumbrances.    The duty is similar to that of commissioners of highways of towns.    The distinction between street and police nuisances is clearly pointed out in the case of *Davis* v. *Bangor*, 42 Me. 522.    See, also, *Campbell* v. *Montgomery*, 53 Ala. 527.    The city is not liable for negatively permitting fire-works in the streets, (*Hill* v. *Charlotte*, 72 N. C. 55;) or for negatively permitting the firing of cannon in the streets, (*Robinson* v. *Greenville, supra; Norristown* v. *Fitzpatrick*, 94 Pa. St. 121.)    It has been repeatedly held that a city is not responsible for the action or non-action of members of its police or fire forces.    *McKay* v. *Buffalo*, 9 Hun, 401, affirmed in court of appeals, 74 N. Y. 619; *Smith* v. *Rochester*, 76 N. Y. 506.    From the testimony it appears that the mayor expressly licensed an individual to set off fire-works on a public street, and thereby authorized a wrongful act.    A lawful license is a governmental act; but, in my opinion, the licensing of a nuisance in a highway is an act of the municipality.

I have shown that a city is not liable for failure to abate a police nuisance where no license has been issued, because the police are not agents of the city.    A different question is presented when a permit has been given, and such nuisance would not have existed without the permit.    The streets are under the care of the authorities of the city.    In the case of *Cain* v. *Syracuse*, 95 N. Y. 83, 89, Judge FINCH held that, under a certain ordinance, the city had power to enter upon private property to abate a nuisance, and used these words:  "In this respect, the power, and therefore the resultant duty, of the corporation is very different from that relating to the city streets, parks, avenues, and buildings, which are within the corporate possession and control, which involve no invasion of private property or private right, and for the negligent care of which the city is alone responsible."    In *Danaher* v. *City of Brooklyn*, 119 N. Y. 241, 250, 23 N. E. Rep. 745, Judge EARL said the city "owned this well, as it owned its other property kept for public use, such as streets, parks, and public buildings; and it owed the duty of reasonable diligence to care for it as it was bound to care for such other property."    If the streets are in the possession and control of the city, then I think that the corporation has no more right to license or maintain a nuisance on such streets than an individual would have on his own property.    *Haag* v. *Commissioners*, 60 Ind. 511, and cases cited.    The city should be held liable for licensing a police nuisance on a street, because the streets are under the control of the corporation.    In *Little* v. *Madison*, 42 Wis. 643, explained in the same case, 49 Wis. 605, 6 N. W. Rep. 249, it was held that the city was liable under a similar state of facts.    In the case of *Robinson* v. *Greenville, supra*, where cannon were discharged in a highway, the corporation was held not to be liable, but in the opinion is to be found the following suggestion:

"We cannot say that the firing was licensed or expressly authorized." In *Burford* v. *City of Grand Rapids*, 53 Mich. 98, 18 N. W. Rep. 571, it appears that the city had licensed coasting in a street, and the same claim was made as in this case. Judge COOLEY says on this question: "If it were unquestionable that coasting upon a public highway was always a nuisance, there would be much plausibility in this contention, and perhaps it should be accepted as sound." The case of *Cohen* v. *Mayor, etc.*, 113 N. Y. 532, 21 N. E. Rep. 700, seems almost in point, for there it was held that the city, by licensing a public nuisance in the street, was liable for any damages resulting therefrom, the same as if it had itself maintained a nuisance. Judge PECKHAM (page 538, 113 N. Y., and page 702, 21 N. E. Rep.) said that "the license itself, the permission, with or without a consideration, to obstruct the street at all for any such purpose as was the case here, is the wrongful act on the part of the defendant which renders it responsible for the damage naturally sustained from such obstruction." In *Danaher* v. *City of Brooklyn*, 119 N. Y. 255, 23 N. E. Rep. 747, *supra*, Judge EARL stated that a city "is held responsible for the nuisance which it creates or permits, and for its wrongful acts." As already set forth, it was illegal to license the display of fire-works; and, while the question whether the corporation is liable for the act of the mayor is not free from doubt, I am inclined to hold that the city was responsible for the mistake of its mayor. The ordinance gives him the right to grant permits, and he erred solely in the place designated for the exhibition. The license was granted *bona fide*, pursuant to a general authority to act for the corporation on the subject. *Lee* v. *Village of Sandy Hill*, 40 N. Y. 442; *Turnpike Co.* v. *City of Buffalo*, 58 N. Y. 639; *Stoddard* v. *Village of Saratoga Springs*, 127 N. Y. 261, 268, 27 N. E. Rep. 1030. The mayor, in the granting of the permit, acted for the corporation, and not in the performance of a duty imposed upon him by law. It also appears that, for several years, it has been customary for the mayor, who is the chief executive officer of the city, to grant permits for the exhibition of fire-works at this particular place, and, as was stated in the case of *Cohen* v. *Mayor, etc., supra*, if it is known that such permits are illegal, and the city is held liable for the damages which result therefrom, it is probable in the future that similar permits will not be granted. An abutting owner can recover damages for a private injury resulting from a public nuisance on the street. *McDonald* v. *City of Newark*, 42 N. J. Eq. 136, 7 Atl. Rep. 855; *St. John* v. *Mayor*, 3 Bosw. 483. After a careful examination of the testimony, I conclude that the plaintiff sustained damages in the sum of $11,000, with interest from March 30, 1888. Judgment for plaintiff for $11,000, with interest from March 30, 1888, with costs; findings to be settled on three days' notice.