ARTHUR H. CANAVAN, Respondent, *v.* CITY OF MECHANICVILLE, Appellant.

Third Department, January 9, 1920.

**Municipal corporations — waterworks — liability of municipality for disease contracted by use of water — when no implied warranty — furnishing water by municipality as sale of commodity.**

A city operating a waterworks system maintained by taxation or assessment is not liable to a consumer of water, who contracts typhoid fever by using the water, on the theory that there is an implied warranty that the same is fit for human consumption.

Where water is diverted by a city from rivers, streams and springs, and is allowed or compelled to flow into storage reservoirs, from which it is again allowed to flow through a network of mains and pipes into the homes, the streets and buildings of the city, so that the occupants of dwellings are furnished with a supply of water, which is paid for by taxation or assessment, the water so furnished is not a commodity which is bought and sold within the meaning of section 96 of the Personal Property Law. (Per H. T. KELLOGG and COCHRANE, JJ.)

Where a city charter provides for the maintenance of a waterworks system through general taxation, or by assessment of the properties supplied, there being no element of property involved, but only an assessment or taxation of the cost, supplying the water involves no sale thereof to the residents furnished, but is only a service performed for them in lieu of their performance of that service for themselves. (Per H. T. KELLOGG and COCHRANE, JJ.)

JOHN M. KELLOGG, P. J., dissents, with opinion.

APPEAL by the defendant, City of Mechanicville, from an order of the Supreme Court, made at the Schenectady Special Term and entered in the office of the clerk of the county of Saratoga on the 13th day of March, 1919, overruling defendant's demurrer to the second cause of action set forth in the complaint.

The issue was brought on and tried as a contested motion pursuant to section 976 of the Code of Civil Procedure.

*Edward C. McGinity*, for the appellant.

*Butler, Kilmer & Corbin* [*Harold H. Corbin* of counsel], for the respondent.

H. T. KELLOGG, J.:

This is an appeal from an order overruling a demurrer to one of two causes of action alleged in a complaint. The complaint, in that part which states the cause of action demurred to, alleges: That the plaintiff was a householder in the defendant city; that the defendant was empowered to maintain a system of water supply for its inhabitants; that it maintained such a system and supplied water for drinking and domestic uses to the premises occupied by the plaintiff for a compensation; that the water so furnished became contaminated with the germs of typhoid fever; that the plaintiff imbibed the water and contracted the disease of typhoid fever; that the defendant warranted the water to be wholesome; that it broke its warranty to the damage of the plaintiff. It is not alleged that the defendant by express words warranted the water nor is the complaint susceptible of a meaning sufficiently comprehensive to include an express warranty. In the first place the city charter of the defendant (Laws of 1915, chap. 170) does not empower it to make an express warranty. In the second place the complaint, after stating that the defendant " conducted " water from a supply of water through the streets to the dwelling houses of its inhabitants, alleges that " in thus furnishing and selling such water " the defendant warranted it to be wholesome. It is, therefore, evident that the plaintiff intends to assert only such a warranty as may be implied from the circumstances attending the delivery of the water. Moreover, it is equally apparent that the plaintiff does not intend to assert a sale and delivery of water in separate packages at regular intervals, as tradesmen might sell milk, mineral water or kerosene, and deliver the same in cans or bottles. For one reason, the city charter (§§ 24, 31 *et seq.*) empowers the defendant to maintain a water works system, including mains and pipes, in order to deliver water to its inhabitants, but it contains no word giving the defendant authority to carry water about the city in containers for sale and delivery to residents. For another reason, the complaint, as already noted, alleges that the supply was furnished by " conducting " it to dwelling houses, which necessarily means that it came thereto by gravity through mains and pipes. Therefore, the simple question of the case is this: Does a city which for a compensation

supplies water through a water pipe to a building there to be used by an inhabitant, impliedly warrant that the water is wholesome and fit for human consumption?

It is the common-law rule that " accompanying all sales by a retail dealer of articles of food for immediate use there is an implied warranty that the same is fit for human consumption." (*Race* v. *Krum,* 222 N. Y. 410.) This rule was modified in the year 1911 when the provisions of section 96 of the Personal Property Law were adopted. (*Rinaldi* v. *Mohican Co.,* 225 N. Y. 70.) That section provides that there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods sold except, among other cases, " where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment." \ An implied warranty of personal property is a collateral contract attending a sale thereof, so that, unless there be a sale with the ordinary circumstances of transfer of title and possession of the thing sold, for a price given for that particular thing, the peculiar facts out of which a warranty is implied do not exist, and there is no warranty. / It is, therefore, necessary first to inquire whether there was between these parties in reference to the water furnished a transaction of bargain and sale accompanied by the incidents ordinarily attending such a sale as between a tradesman and a customer.

When water is diverted by a city from rivers, streams and springs, and is allowed or compelled to flow into storage reservoirs, from which it is again allowed to flow through a network of mains and pipes into the houses, the streets and buildings of a city, so that the occupants of dwellings are, for a compensation, furnished with a supply of water, it may well be doubted whether the water so furnished is a commodity which is bought and sold. In *Sweet* v. *City of Syracuse* (129 N. Y. 316) the facts were that the State of New York had appropriated " the waters of the Skaneateles lake   *   *   * to the use of the public for a reservoir and feeder to the Erie canal " and that the Legislature had thereafter granted permission to the city of Syracuse to divert all waters in the lake, not needed for the purposes of the canal, by means of mains and pipes, so that the inhabitants of the city might be provided with a

supply of water. It was held in that case that the State by granting such permission had not appropriated public property for local or private purposes within the meaning of the Constitution of 1846 (Art. 1, § 9; now Const. art. 3, § 20), for the reason that the State had never acquired a property right in the waters of the lake. It was there said: "It is a principle, recognized in the jurisprudence of every civilized people from the earliest times, that no absolute property can be acquired in flowing water. Like air, light, or the heat of the sun, it has none of the attributes commonly ascribed to property, and is not the subject of exclusive dominion or control. * * * In this case the State never acquired, or could acquire, the ownership of the aggregated drops that comprised the mass of flowing water in the lake and outlet, though it could and did acquire the right to its use." That case is not distinguishable from the case under consideration through the fact that there the reservoir which detained the waters was a natural lake while here there may have been a reservoir which was artificially created to supply the pipes through which the water was furnished. Waters coming into a storage reservoir, whether natural or artificial, are flowing, not stagnant, waters. They are received by flowage, and they make their exit by flowage, whether through overflow pipes into drains, or through mains and pipes into private dwellings, where the water not used, or used and not consumed, again passes off by flowage and makes its escape. Waters thus passing into a reservoir are not reduced to possession by a city, nor does possession thereof or title thereto pass, gallon by gallon, or drop by drop, from the city to an inhabitant, whenever the inhabitant taps the pipe which brings it to his house. Therefore, it would seem that water was not the subject of barter and sale between these parties. Rather would it seem that this plaintiff, for a compensation paid, enjoyed a right or privilege to make use of water as it passed through his dwelling, conducted in pipes installed by the defendant, precisely as a riparian owner might enjoy the right to take water from an open stream.

There is another reason why it would seem that the transaction between these parties was not the ordinary transaction of bargain and sale with warranty. The city charter of the

defendant provides for the maintenance of a water works system through general taxation or by assessment of the properties supplied.   If the first plan is in vogue then clearly there is no sale because for the thing furnished no purchase price is paid.   This would likewise seem to follow if the expense is borne by assessments upon the properties benefited.   Assume that the residents of a city who desire water combine and furnish it to themselves, assessing upon members the exact cost of its supply, adding nothing for a profit, and distributing the burden proportionately to the benefit.   That would be a co-operative project in which no one person would sell to any other person or warrant the water supplied.   When a city furnishes water to a similar group, assessing upon their properties without profit the exact cost, it would seem that the transaction though performed by the city, is nevertheless equally co-operative.   It was said in *Quill* v. *Mayor* (36 App. Div. 476) by CULLEN, J., concerning the removal by a city of the ashes and garbage of residents: " The city discharges the private duty of the members of the municipality which it has become difficult for those members to discharge themselves. The same is true of the furnishing of water to the residents. It was primarily a private enterprise." \There being no element of profit involved, but only an assessment or taxation of the cost, it seems to me that a city water supply involves no sale of water *to* the residents furnished but only a service performed *for* the residents in lieu of their performance of that service for themselves. /Therefore, I think there was no sale of water to this plaintiff.

If, however, we assume that the city sold water to the plaintiff, then the question remains whether the sale was such that, within the terms of section 96 of the Personal Property Law, a warranty impliedly accompanied the sale.   There was such a warranty only if it were a case " where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment."   In the interpretation of this clause the Court of Appeals in *Rinaldi* v. *Mohican Co.* (*supra,* 74), through ANDREWS, J., has recently said: " But we think further that such a purchase, where the buyer may assume that the seller has the

opportunity to examine the article sold,. unexplained, is also conclusive evidence of reliance on the seller's skill or judgment. *We here limit the rule.*" It has not been alleged that the plaintiff relied " on the seller's skill or judgment," so that we must inquire whether as a matter of law upon the facts stated we have a case where " the buyer may assume that the seller has the opportunity to examine the article sold." In the instance of articles of food ordinarily sold the seller has the physical custody thereof so that inspection and examination may be had and the buyer " may assume " that they are made. Water supplied from a reservoir is never in the actual physical custody of the seller.   Everyone knows that almost universally all such water is collected from running streams, rivers or lakes, which are themselves supplied by the drainage of wide areas of land; that such water runs over earth uncovered to the air, or percolates through soil; that it is collected for distribution in large ponds; that the soil through which or over which it passes cannot minutely be examined; that contamination of the water can be restricted but not prevented; that inspection alone will not reveal the presence of bacteria; that analyses of the great volume of moving water collected in the ponds cannot be made; that an inspection, an examination, or an analysis of every drop of water furnished is beyond the power of the seller.   Therefore, a buyer cannot " assume that the seller has the opportunity to examine " the water sold, so that invariably contamination and disease may be avoided. Consequently, I think the defendant did not impliedly warrant the waters furnished to this plaintiff.

The order should be reversed and the demurrer sustained.

COCHRANE, J., concurs; JOHN M. KELLOGG, P. J., dissents, with an opinion; LYON, J., not voting, not being a member of the court; KILEY, J., not sitting.

WOODWARD, J. (concurring):

The complaint in this action alleges that the defendant is a municipal corporation, authorized by its charter to construct, operate and maintain a water plant for the supplying of pure and wholesome water to its inhabitants; that the plaintiff

occupied certain premises with his family, and that the defendant failed in its obligation to supply pure and wholesome water; that, on the contrary, it supplied water contaminated with typhoid fever germs; that the plaintiff and his family drank the water thus supplied by the defendant, and that typhoid fever resulted, to the damage of the plaintiff in the sum of $10,000. The first cause of action proceeds upon the theory of negligence, while the second alleges an implied warranty on the part of the defendant of the quality of the water, and a breach of this implied warranty. The defendant demurs to the second cause of action, and the learned court at Special Term has overruled the demurrer (108 Misc. Rep. 579), the defendant appealing from the order.

If the defendant is maintaining a public nuisance there is little doubt that the plaintiff, suffering special damages, would be entitled to recover such damages, without reference to the question of negligence. No question is here raised as to the cause of action resting in negligence, but the one question is presented whether the municipality, maintaining a water plant for the purposes of sewer sanitation, fire protection and domestic use, rests under the harsh rule which prevails in respect to foods sold for immediate consumption.

It seems clear to me that there is no such liability assumed by a municipal corporation in respect to a water plant, designed primarily to perform a governmental or police function of guarding against fires. It is not to be doubted that in the purveying of water to private consumers for domestic purposes the municipal corporation is occupying the position of a public service corporation, and that it owes the duty to its customers to use reasonable care in the performance of that service, but it is not liable in a civil action for failing to protect the individual from loss by fire, caused through a failure to provide sufficient water (*German Alliance Ins. Co.* v. *Home Water Co.*, 226 U. S. 220, 227), and I do not understand that the rule sought to be applied here goes to the extent of holding that every vendor of a merchantable product, designed for human consumption, impliedly warrants the quality. The rule, as I understand it, is that " where the vendor is not the manufacturer, and the purchaser knows this fact, in the absence of proof of an express warranty or of fraud or deceit upon the part of the seller, he is

not responsible for latent defects," or, as the court says in *American Forcite Powder Manufacturing Co.* v. *Brady* (4 App. Div. 95, 97), " a dealer does not impliedly warrant against latent defects, except where the sale of the article by him is in and of itself legally equivalent to a positive affirmation that the article has certain inherent qualities inconsistent with the claimed defects, as in the case of the sale of provisions for domestic use."   In the very recent case of *Race* v. *Krum* (222 N. Y. 410, 413), where the court had under consideration a case of tyrotoxicon poisoning, through eating ice cream at a drug store, it was said that " as to the second contention, I am of the opinion the trial court did not err in instructing the jury that when defendant sold the cream to plaintiff he impliedly warranted it was wholesome and fit to eat.   In this connection, however, it must be borne in mind that we are not dealing with the liability of hotel proprietors, restaurant keepers, dining-car managers, or people engaged in business of that kind, but are considering solely the liability of a dealer who makes or prepares the article that he is selling.   As to such dealer we believe the instructions were proper.   The   general   rule established by the weight of authority in the United States and England is that accompanying all sales by a retail dealer of articles of food for immediate use there is an implied warranty that the same is fit for human consumption."   But this is a special rule,. applied to retail dealers in articles of food as to which they have the better opportunity of knowing and judging.   " The seller," say the court, " has an opportunity which the purchaser does not of determining whether the article is in the proper condition to be immediately consumed.   If there be any poison in the article sold, or if its condition render it unfit for consumption, and the consumer be thereby made ill, some one must of necessity suffer, and it ought not to be the one who has had no opportunity of determining the condition of the article, but rather the one who has at his command the means of doing so."

It is conceded that this is a harsh rule of responsibility, and it ought not to be extended beyond the limits already defined. It obviously does not apply to the cases mentioned by the court in the above quotation, and why should a municipal corporation be held to a higher degree of liability than would attach to the

proprietor of a hotel or restaurant, or the manager of a dining-car service? The municipality, it must be assumed, in selecting its source of supply, procured water which was up to the requirements of its statutory obligations. Having originally procured a proper source of supply, the presumption would continue, until there was something to put it upon notice, that the quality remained pure and wholesome. At least it would seem that the corporation was required only to exercise that reasonable degree of care to discover impurities endangering life which the importance of the service would reasonably suggest; and to apply the harsh doctrine applicable to retail dealers in food stuffs for immediate consumption is for the courts to usurp the prerogatives of legislation, where its manifest duty is merely to declare the law as it is. " The general rule as to an implied warranty in the sale of goods," say the court in *Coleman* v. *Simpson, Hendee & Co.* (158 App. Div. 461, 463), " is that, unless the vendor is the producer or manufacturer of the articles, there is no implied warranty against latent defects, even if the vendor knows the purposes for which the goods are bought." The city of Mechanicville is not the producer or manufacturer of the water which it distributes; it is merely the collector of a natural product, which it distributes through its pipes and mains. Its primary purpose is fire protection, and while it has no right to disregard the health of the community, it seems clear to me that until there is some neglect of ordinary care, commensurate with the responsibility of service undertaken, there is no such liability as is attempted to be asserted in the second cause of action.

The order appealed from should be reversed and the demurrer sustained.

CONCHRANE, J., concurs; JOHN M. KELLOGG, P. J., dissents, with an opinion; LYON, J., not voting, not being a member of the court; KILEY, J., not sitting.

JOHN M. KELLOGG, P. J. (dissenting)

If we consider the limited power of municipal corporations we are apt to lose sight of the real question. A municipality when it engages in the water business assumes the same liability as rests upon a private corporation or individual

engaged in such business. In the practical operation of municipal water plants, perhaps it is safe to say that the water comes from wells, springs or streams owned or controlled by the municipality, and it is pumped or flows from them, and is distributed through the municipal pipes by gravity or pumping to the consumer. The municipality presumably has acquired by purchase or condemnation the adjoining land and the water rights. Running water, like a wild animal, becomes the private property of the person who legally captures or confines it, and when the city brings water from any source owned and controlled by it to its pipes for distribution, the city is the owner of the water passing through such pipes. " In the character of personal property, water, separated from its source or from the body of which it constituted a part, may be bought and sold like other commodities, as when it is supplied through artificial conduits for domestic use, or irrigation, or when solidified in the form of ice; but the flowing water of a stream is not susceptible of absolute ownership and admits only of a transient, usufructuary property." (40 Cyc. 552.) It is a common sight upon our streets to see vendors with vehicles going from house to house selling spring water, and the groceries and drug stores in the villages and cities sell waters of various kinds as articles of merchandise. In many places drinking water is frequently supplied by carriers, who retail it from door to door. We do not know in what manner the city of Mechanicville acquires its water. It may pump it from the source into a reservoir, from which it is distributed through its pipes by gravity. It may force it through its pipes by pumps. The particular method is immaterial. It is immaterial whether water is brought to the consumer through pipes or by tank wagons or otherwise. The important fact is that the water as it is supplied and furnished at the tap in the various houses up to the time it is drawn, is the property of the city, and when it leaves the tap is the property of the consumer. We do not know whether the plaintiff paid for the water by the month or by the year, or by meter measurement. In any event, he paid for the water consumed. If not by actual measurement, the charge was based upon the amount of estimated consumption.

We are not called upon to fix a rule applicable to cities

only, but the rule must apply to all water distributors. In *Milnes* v. *Mayor of Huddersfield* (L. R. 12 Q. B. Div. 443) the municipality was held to warrant the wholesomeness of the water sold by it, Lord COLERIDGE, Ch. J., saying: " Inasmuch as they are bound to deliver to him a wholesome article, and the whole carriage of the article from the reservoir to his house was through what belonged to, and was under the domination of, the corporation, the corporation would be liable." (See *Danaher* v. *City of Brooklyn,* 51 .Hun, 563; 119 N. Y. 241.)

In my judgment the water was disposed of by the defendant as merchandise, and falls within section 96 of the Personal Property Law (as added by Laws of 1911, chap. 571), and as that act is interpreted by *Rinaldi* v. *Mohican Co.* (225 N. Y. 70) there is an implied warranty of its quality. I, therefore, favor an affirmance.

Order reversed, with ten dollars costs and disbursements, and demurrer sustained, with costs.