THE SPRINGFIELD FIRE AND MARINE INSURANCE COMPANY of Springfield, Massachusetts, Appellant, v. THE VILLAGE OF KEESEVILLE, Respondent.

*Complaint demurred to — statutory provisions read in connection with the allegations of a complaint based thereon — public and private powers and liabilities of municipal corporations — maintenance of water works — liability for negligence in regard thereto.*

Upon the argument of a demurrer to a complaint the plaintiff is entitled to the most favorable construction of the facts alleged in his complaint.

The complaint in an action brought against a municipal corporation to recover damages resulting from its negligence in the maintenance of its water works, must be read as if the statutes governing the defendant corporation were written therein.

Municipal corporations possess two kinds of power — one governmental and public and the other corporate or private; the first is given and used for public purposes, and in the exercise of those powers it acts as a municipal corporation; the other is given for corporate purposes, and where a municipal corporation assumes or accepts powers and duties that are not public in their nature it is to be treated in relation to those powers and duties as a business corporation or a natural person would be.

Where a service is being rendered for the public good and in obedience to law, and is one in which a municipal corporation has no particular interest, and from which it derives no particular benefit in its corporate capacity, the municipality is not liable for the improper or negligent performance of that service, nor is it responsible for the acts of its officers or agents performing such public service, although the officers and agents are designated by the municipality.

As to those powers and duties of a municipal corporation, which are private corporate powers and duties, and are not for the benefit of the general public, the corporation is regarded as a legal entity, and is responsible for its omission to perform its corporate duties, to the same extent that a natural person would be under the same circumstances.

The supplying of water by a municipal corporation is not a public function; it is purely a matter of private business in which the general public has no interest; and if a municipal corporation elects to construct and maintain water works under the authority granted to it by statute, it becomes responsible for the proper exercise of such powers.

Municipal corporations are bound to use the same degree of care and diligence in respect to the maintenance of their water works as they are required to exercise in regard to their streets and sewers, and where a person who has been obliged to contribute towards the expenses of the water supply proves that by the willful misconduct or culpable neglect of a municipal corporation he was deprived of the use of water for the purpose of extinguishing a fire, whereby he has been damaged, he establishes a cause of action.

When a municipal corporation exercises the power of erecting and maintaining water works it assumes a two-fold obligation — one not to create any new source or condition of danger by the negligent exercise of such power, and the other to remove or at least diminish existing conditions or sources of danger, such as danger from fire. The first duty it owes to all the world; the second it does not, perhaps, owe to the general public, but only to those who contribute to pay the expenses of exercising such powers.

A public corporation having agreed to erect and take charge of a public work or enterprise for the people within its boundaries, those who contribute of their means to the erection and maintenance of such public work have a right to demand from the corporation reasonable care and diligence in maintaining it, so that it will discharge the functions for which it was created, and for which the contributors pay, and to hold the corporation liable for a lack of such care and diligence. Such is the nature of the implied contract between a water ren t payer and a municipal corporation.

APPEAL by the plaintiff, The Springfield Fire and Marine Insurance Company of Springfield, Massachusetts, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Essex on the 3d day of January, 1894, upon the decision of the court, rendered after a trial of the issues of law raised by the defendant's demurrer at the Essex Special Term, dismissing the plaintiff's complaint, with notice of an intention to bring up for review on such appeal the order sustaining the demurrer to the complaint.

*A. W. Boynton,* for the appellant.

*C. B. McLaughlin,* for the respondent.

HERRICK, J.:

This is an appeal from a judgment in favor of the defendant and against the plaintiff upon a demurrer interposed by the defendant to the complaint of the plaintiff.

The plaintiff alleges that it is a fire and marine insurance company, duly incorporated under the laws of Massachusetts, and licensed to do a fire insurance business within this State.

That the defendant is a village duly incorporated under the laws of the State of New York, and that for some six years prior to the commencement of this action the plaintiff has carried on the business of fire insurance within the limits of the defendant. That for the privilege of so doing, and having the protection of the water works, the fire department and appliances of the defendant, it has paid an annual tax to the defendant.

And further alleges, upon information and belief, that the defendant is, and was at the time of the transactions set forth in the complaint, the owner and in the possession and control of a system of water works and fire appliances, consisting of pumps, water mains, pipes, hydrants and water hose, and, in connection therewith, has and had firemen for the purpose of extinguishing fires; that the said water works and appliances were purchased and maintained by the defendant by taxes levied and raised upon the taxable inhabitants of the village, and upon the plaintiff and other insurance companies, and by water rents paid by such inhabitants.

That by reason of the supposed protection from fire afforded by said water works and fire appliances the plaintiff insured all property within the village, including that of Emily E. Brewer, forty per cent less than it did like property outside the limits of said supposed water and fire protection.

That one Emily E. Brewer was a resident of the defendant, and had been for several years, and paid her proportion of the aforesaid taxes, and that on the 6th day of October, 1892, a dwelling house of the said Emily E. Brewer, situated within the corporate limits of the defendant, caught fire and was burned and damaged to the amount of $4,450. That at the time of the fire said dwelling house was insured in the plaintiff in the sum of $5,000, and that the plaintiff paid said Emily E. Brewer her damages caused by such fire to the amount of $4,450.

The plaintiff further charges that at the time of the fire the defendant had wrongfully and negligently allowed and caused its water works, pumps, pipes and fire appliances to be and remain out of repair, broken and weakened, stopped with mud and other foreign objects to such an extent that water could not be thrown or put upon said dwelling house to extinguish the fire, and alleges that if said water works and fire appliances had been in proper order the dwelling house would not have been damaged to an amount exceeding $300.

The plaintiff also alleges that the defendant employed incompetent and unfit men to care for and maintain its water works and fire appliances. And the plaintiff alleges that its loss to at least the extent of $4,150 was caused solely by the negligence and wrongful and unlawful acts of the defendant in failing to keep its water works and fire appliances in proper working order, and in failing to employ competent men to manage and care for the same.

The plaintiff alleges that the said Emily E. Brewer has assigned and transferred to it all claims and demands against the defendant by reason of said fire and damages.

The defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action.

From the reading of the complaint it is somewhat difficult to determine whether the fire apparatus or appliances were a part of the water works system, or whether the fire department and apparatus were separate and distinct from the water works, merely obtaining their supply of water from the water works, and having no other connection with them. For the negligence of a fire department, as such, different principles are involved than in cases of the negligence of other departments of a municipal government. Under the complaint in this action, negligence upon the part of the water department of defendant, as such, may be proved.

The plaintiff upon a demurrer is entitled to the most favorable construction of the facts alleged in his complaint, and I shall, for the purpose of this discussion, assume that the two departments are separate and distinct, and that the negligence charged is entirely in relation to the water works as such.

The questions raised are interesting and somewhat difficult of solution.

Municipal corporations possess two kinds of power, one governmental and public, and the other corporate or private; the first is given and used for public purposes, and in the exercise of those powers it acts as a municipal corporation; the last is given for corporate purposes, and in the exercise of such powers it acts as a private corporation or individual. (*Lloyd* v. *The Mayor*, 5 N. Y. 369; *Maxmilian* v. *The Mayor*, 62 id. 160; *Ham* v. *The Mayor*, 70 id. 459.)

Where the service is being performed for the public good, in obedience to law, and is one in which the municipality has no particular interest, and from which it derives no particular benefit in its corporate capacity, the municipality is not liable for the improper or negligent performance of that service. (*Maxmilian* v. *The Mayor*, 62 N. Y. 160; *Smith* v. *City of Rochester*, 76 id. 506; *Ham* v. *The Mayor*, 70 id. 459; *Bieling* v. *City of Brooklyn*, 120 id. 98–106.)

The municipality is not responsible for the acts of the officers or agents performing such public services, although such officers and agents are designated by the municipality; the maxim *respondeat superior* does not apply. (*Maxmilian* v. *The Mayor, supra.*)

As to those powers and duties which are private corporate powers and duties, and are not for the benefit of the general public, a municipal corporation is regarded as a legal entity, and is responsible for its omission to perform its corporate duties to the same extent that a natural person would be under the same circumstances. (*Conrad* v. *Ithaca*, 16 N. Y. 158–172; *N. Y. & B. S. M. & L. Co.* v. *City of Brooklyn*, 71 id. 580; *Platz* v. *City of Cohoes*, 89 id. 219.)

It is sometimes exceedingly difficult to draw the distinction between what are public and what are private corporate powers and duties.

"The administration of justice, the preservation of public peace and the like, although confided to local agencies, are essentially matters of public concern; while the enforcement of municipal by-laws proper, the establishment of gas works and water works, the construction of sewers and the like, are matters which pertain to the municipality as distinguished from the State at large." (Dillon on Mun. Corp. [3d ed.] § 58.)

The supplying of water by municipal corporations is not a public function; it is purely a matter of private business. (*Matter of Long Island Water Supply Co.*, 30 Abb. N. C. 36.)

The general public have no interest in it; it is purely a local matter, exclusively for the benefit of the village.

When the water works are constructed they belong to the village; the people of the village pay for them, and ordinarily receive rentals for supplying water. (*Fleming* v. *Village of Suspension Bridge*, 92 N. Y. 368; *Pettengill* v. *City of Yonkers*, 116 id. 558.)

And in *Bailey* v. *The Mayor* (3 Hill, 531) it was held that the powers granted by the act providing a supply to the city of New York with pure and wholesome water were intended for the private advantage and emolument of that city, the State in its sovereign capacity having no interest in it, and that, therefore, the city was liable for the negligent construction of the dam by the employees of the water commissioners.

While this case has been criticised in some respects, in several cases, such as in *Darlington* v. *The Mayor* (31 N. Y. 164), the principle decided has never been overruled or departed from, but has been approved in *Walsh* v. *Bridge Trustees* (96 N. Y. 427); *Ehrgott* v. *The Mayor* (96 id. 264), and the same principle has been maintained by the elementary writers.

"In regard to all those powers which are conferred upon the corporation, not for the benefit of the general public, but of the corporators, such as the power to construct works to supply a city with water or gas works, or sewers, and the like, the corporation is held to a still more strict liability, and is made to respond in damages to the parties injured by the negligent manner in which the work is constructed or guarded, even though, under its charter, the agents for the construction are not chosen or controlled by the corporation, and even where the work is required by law to be let to the lowest responsible bidder." (Cooley's Const. Lim. [3d ed.] 249; Beach's Pub. Corp. § 1140.)

The complaint must be read in connection with the statutes governing the defendant; they are as much a part of the complaint as if written in it.

The defendant was authorized by chapter 181 of the Laws of

1875, and various acts amendatory thereof, to construct and maintain water works to supply its inhabitants with water.

The president and trustees constitute the board of water commissioners. (Chap. 74, Laws of 1891.)

The defendant receives rents for supplying water; it has control over all the employees connected with the water works; it can employ and discharge them at pleasure; they are its servants. The construction and maintenance of the water works is something that was not forced upon it by the power of the State; it could act under the law authorizing it to construct and maintain water works, or refuse to act, at its pleasure; but having accepted the power and authority granted, it became responsible for the proper exercise of such powers. (*Cain* v. *Syracuse*, 95 N. Y. 83.)

Considerable stress was laid in the trial court upon the burdens that would be thrown upon municipalities by holding them responsible in damages in cases like the one before us; while I am not insensible to such considerations, and while perhaps the court may properly give weight to them in arriving at its determination as to what the law is, still it seems to me that it would be going too far to hold that where a municipal corporation receives money for the support and maintenance of its water works, has absolute power to employ and discharge the men necessary to care for and maintain such department, it shall in no case be held liable for damages resulting from employing incompetent men, and for knowingly and negligently permitting its water works, mains and pipes to become and remain out of repair and unfit for service.

To so hold would remove one great incentive to furnishing an efficient water service. Ordinarily, where there is no responsibility there is an inefficient public service.

Every administration in charge of a municipality is anxious for public approval; that approval largely depends upon the tax rate; and to hold municipalities responsible in damages for any lack of reasonable care and diligence in maintaining their public works, which results in injury to property, will result in increased diligence to prevent any increase in the municipal charges.

Municipalities, like individuals, are very sensitive to attacks upon the purse. Increased pecuniary responsibility begets increased care and diligence.

It seems to me that, in matters like these we are now considering, it is no hardship, but on the contrary it will result in a more efficient public service, if municipal corporations are held responsible for the same degree of care and diligence that they are held to in respect to streets and sewers — as expressed by Chief Justice ANDREWS: "The language of the cases expressing the measure of duty resting upon a municipal corporation in respect to its streets, sewers, etc., has not always been carefully guarded, but the doctrine has been frequently reiterated in this court that there is no absolute guaranty or undertaking on the part of a municipal corporation that its streets or other constructions shall at all times and under all circumstances be in a safe and proper condition, and that its obligation and duty extend only to the exercise of reasonable care and vigilance. There must be *willful misconduct or culpable neglect* to create liability." (*Hunt* v. *The Mayor*, 109 N. Y. 135–141. See, also, *Danaher* v. *Brooklyn*, 119 id. 241.)

The water to be supplied by the defendant, and for which the plaintiff and its assignor contributed to pay, was, amongst other things, for the purpose of extinguishing fires, and it seems to me that where a person can prove that by the willful misconduct or culpable neglect of the defendant, he was prevented from the use of water for such purpose, whereby he has been damaged, he establishes a cause of action. The complaint here is broad enough to permit evidence of willful misconduct or culpable neglect; which being proved, it seems to me would entitle the plaintiff to recover.

This is not a case where there is simply an inadequate supply of water, but one where, by the mismanagement and neglect of the municipal authorities, the plaintiff's assignor has been prevented from using the water that was otherwise to be had, that she had paid to receive, and that the defendant had, impliedly at least, contracted to furnish.

The case of *Danaher* v. *Brooklyn* (*supra*) was an action to recover damages for injuries occasioned by drinking impure water at a public well in said city. The court there said : "This water was not furnished for a compensation paid for its use; there was no contract relation between the city and those who used it. The well was for public gratuitous use. * * * It owned this well as it owned its other property kept for public use, such as streets, parks

and public buildings, and it owed the duty of reasonable diligence to care for it as it was bound to care for such other property. Its liability for unwholesome water in any of its public wells must rest upon negligence."

The city was held not liable, because there was no evidence of negligence on its part in caring for the well, but the prevailing opinion held that it was undoubtedly the duty of the city to keep wells and pumps in good order. Keep them in good order for what purpose? To supply good and wholesome water for potable purposes; that was the function to be performed by the wells and pumps.

The function to be discharged by the water works of the defendant is, among others, to furnish water to extinguish fires; it is the duty of the defendant to keep them in such condition that they may discharge that function.

There may be a distinction between those cases where the injury complained of would not have happened but for the municipality undertaking to exercise a power, and negligently exercising it, so as to create a dangerous condition which would not otherwise exist — as to dig and maintain wells, and allowing the water to become unwholesome and poisonous; or to erect a dam and negligently maintain it; or by its negligent care of water works, letting water escape so as to undermine a street — and those cases where the same danger would exist, and the same injury result, if the municipality had never assumed to exercise the power in question.

Danger from fire always exists, and lack of water to extinguish it, resulting in damage, is no new condition of danger created by the defendant.

But when the defendant assumed the power of erecting and maintaining water works, it assumed a two-fold obligation — one not to create any new source or condition of danger by the negligent exercise of such power, and the other to remove, or at least diminish, existing conditions or sources of danger, such as danger from fire.

The first duty, that of not creating any new conditions of danger, it owes to all the world; the second, the removal or diminishing of existing conditions or sources of danger, it does not, perhaps, owe to the general public, but only to those who contribute to pay the expense of exercising such powers.

In the *Danaher Case* (*supra*) the court, it will be observed, laid stress upon the fact that in that case there was no contractual relation between the city and the parties using the water; that it was gratuitously furnished; in this case the facts are directly contrary. The water is not furnished gratuitously by the defendant.

The water works of the defendant are not supported and maintained by general taxation, but by rents, which rents are measured to a certain extent by the needs of the persons using the water and the amount consumed by them.

The water commissioners are authorized to establish a scale of rents to be charged and paid to them " for the supply of water, to be called water rents, and appropriated to different classes of buildings in said village, in reference to their dimensions, values, exposure to fires, ordinary or extraordinary uses for dwellings, stores, shops, hotels, factories, livery stables, barns and all other buildings, establishments and trades, yards, number of families or occupants or consumption of water as near as may be practicable." (§ 13, chap. 181, Laws of 1875.)

The rents are to be paid to them " for the supply " of water.

One of the things to be taken into consideration in determining the amount of such rentals is the exposure to fire of the building to be supplied with water; and, as I think may be a fair interpretation, the value of the protection from fire afforded by the water supply.

In other words, the water rent payer pays for water to be used in case of fire, to save him from loss and damage. ·And it seems to me that where a person pays that rent he has some rights, and the defendant is under some obligation to him.

As we have seen before, when a municipal corporation assumes or accepts powers and duties that are not public in their nature, it is to be treated in relation to those powers and duties in the same way as a business corporation or a natural person would be.

If a business corporation or natural person had made a charge for furnishing water, and had accepted payment of that charge, we would consider that a contract to furnish water to the person paying.

And if that business corporation, by sheer mismanagement, the employment of incompetent men, and by negligence, had prevented the use of the water it had agreed to supply, when it was most

needed, the courts, I think, would hold such corporation or person liable for the direct resulting damages.

The defendant has gone into the water supply business; it is a private corporate business, conducted for its own benefit, and not for the general public; and it would seem to legitimately follow from the different responsibilities recognized by the courts of the State, for acts done by municipal corporations in the discharge of duties that are public in their nature and those that are only for the benefit of the particular municipality, that the defendant is liable as for a breach of contract.

While such a conclusion seems to result naturally from the principles of the cases I have referred to, still I think it is not entirely a correct one. The defendant after all is a purely public corporation; all the powers it has are for the public benefit; some for the general public; some for the public within its boundaries; it is not a corporation conducted for pecuniary gain or profit, and should not be held to the same strict accountability as one conducted entirely for gain; it should not be regarded as an insurer or guarantor.

But a public corporation having agreed to erect and take charge of a public work or enterprise for the people within its boundaries, those who contribute of their means to the erection and maintenance of such public work have a right to demand from the corporation reasonable care and diligence in maintaining it, so that it will discharge the functions for which it is created and for which the contributors pay, and to hold it liable for a lack of such care and diligence. That, I think, can fairly be held to be the nature of the implied contract between the water rent payer and the defendant.

This duty and obligation the defendant, by its demurrer, admits that it failed to perform.

It admits that it "wrongfully and negligently allowed and caused its said water works, pumps, pipes and fire appliances to become and be out of repair, broken and weakened, stopped with mud and other foreign objects, and unfit for use to such extent that water could not be thrown or put upon said dwelling house to extinguish the fire therein." And it admits that "if said fire appliances and water works had been in proper working order, said fire could and would have been extinguished without damaging said house to exceed three hundred dollars."

The plaintiff alleges and the defendant admits that it " employed incompetent and unfit men to care for and maintain its said water works and fire appliances."

The plaintiff alleges and the defendant admits that the plaintiff's loss of $4,150 " was caused *solely* by the negligence and wrongful and unlawful acts of defendant in failing to keep its water works and fire appliances in proper working order, and in failing to employ competent men to manage and care for the same."

These allegations and admissions of negligence and of wrongful and unlawful acts, resulting in injury to plaintiff and its assignor, are very broad, and to hold that they do not constitute a cause of action is practically to hold that there is no responsibility attached to municipal corporations, no matter how culpably or willfully negligent they may be in discharging corporate duties they have voluntarily assumed to discharge, and that there is no penalty for the unfaithful discharge of such obligations, unless some official performs some overt act which rises to the dignity of a crime.

It seems to me that the complaint sets forth a cause of action, and that the demurrer should be overruled.

I have examined the authorities of other States cited upon the brief of counsel and others. This discussion has already extended so far that I do not desire to prolong it, neither do I see that any profit can be gained by a discussion of those cases. Some of them are in States where there is no municipal liability except that derived from statute. Some arose out of the negligent acts of officials of the fire department, and it was held that officers of the fire department were not the agents or servants of the municipality, for whose negligence it was liable; in others no distinction is made between powers conferred and duties performed for the welfare of the general public and those that are corporate in their nature, a distinction which, as we have seen, is well recognized in this State; in some there was an inadequate supply of water; in others it turned upon the exercise of the discretion of the authorities in the location of apparatus. Special features distinguished those cases from this.

There are also some cases directly in conflict with the views herein expressed.

It is sufficient to say that after a consideration of the views of the

courts in the various cases referred to, it seems to me that in a case where the issue is purely one of negligence, the conclusion at which I have arrived as to this complaint is in consonance with the principles relating to municipal liability recognized by the courts of this State, although, so far as can be gathered from the reported cases, never before applied in an action like the one now sought to be maintained.

The judgment appealed from should be reversed, with costs of this appeal, the demurrer overruled, with costs, with leave to the defendant to plead over.

MAYHAM, P. J., concurred in result; PUTNAM, J., not acting.

Judgment reversed, with costs of appeal, demurrer overruled, with costs, with leave to defendant to plead over.